840 So.2d 343 (2003)
CITRUS COUNTY, Florida, Appellant,
v.
Bruce Michael McQUILLIN, etc., et al., Appellees.
No. 5D02-297.
District Court of Appeal of Florida, Fifth District.
February 21, 2003.
Rehearing Denied March 18, 2003.
*344 Nicole E. Weiss and Alan S. Zimmet of Zimmet, Unice, Salzman & Feldman, P.A., Clearwater, for Appellant.
John G. Crabtree of John G. Crabtree, P.A., Key Biscayne, and Edward L. Scott of Edward L. Scott, P.A., Ocala, for Appellees.
SHARP, W., J.
Citrus County appeals from the trial court's denial of its motion for a new trial or to set aside the verdict and final judgment in a wrongful death case. The jury returned a verdict awarding Bruce McQuillin, personal representative of his late wife's (Deborah McQuillin) estate, a total of 5.56 million dollars, reduced by 80% due to its attribution of comparative negligence to Deborah. Making up the total award were findings on net accumulations ($50,400), funeral expenses ($8,000), loss of service and support to the surviving spouse ($591,260), past and future pain and suffering for the surviving spouse ($516,000) and past and future loss of parental companionship and pain and suffering for Deborah's son, who was seven-years-old at the time of her death ($4,400,000). We affirm in part and reverse in part.
This case arose out of a tragic one-car accident caused by the driver losing control of the car which was traveling at a high rate of speed on a county road. The *345 car's wheels left the side of the road and when the driver "jerked" the car back onto the road, she lost control of the car. The rear of the car skidded sideways across the road causing the car to roll over and hit several trees. The damage to the car was described as "horrific." Two passengers were ejected from the car, but Deborah was killed instantly, having suffered massive head injuries.
Based on the estate's expert testimony presented at trial, the jury concluded that the accident was partially caused by a drop off of some three to five inches from the surface of the pavement to the shoulder of the road. The county had just re-paved that section of the road, and there were no warning signs or markers to delineate the drop off. Experts testified that while the drop off did not contribute to the driver running off the road, it prevented her safe return to the surface of the road. They testified the drop off on this newly paved county road was a clear hazard to cars, even ones traveling only thirty miles per hour, especially since the drop off was straight down at a ninety degree angle.
On appeal, Citrus County argues that the trial court erred in admitting a gruesome photograph of the decedent as her body was placed in a body bag at the scene of the accident. Even if relevant, the County argues it was unduly inflammatory. § 90.403, Fla. Stat. As we have said before, the admission of photographs is within the trial court's broad discretion and its rulings will not be overturned on appeal unless there is a clear abuse of discretion. Waggoner v. State, 800 So.2d 684 (Fla. 5th DCA 2001). See also Rutherford v. Moore, 774 So.2d 637 (Fla.2000). The test for admissibility is relevance. Waggoner.
We think the photograph was relevant to support McQuillan's version of the facts in this accident. He was attempting to persuade the jury that Deborah was not the driver of the car, but rather that one of the two passengers was the driver. The photograph tended to support an expert witness's theory that Deborah had been a back-seat passenger, due to the nature of her injuries (to the back of her head).
In spite of its relevance, whether the photo was so gruesome as to outweigh its relevance by inflaming the jury is a judgment callprimarily one for the trial judge. As an appellate court we cannot say there was an abuse of discretion in this case. The jury knew from the testimony this had been a violent and devastating accident and the decedent's body had to be cut out of the car. The photo was not enlarged nor did it unduly exaggerate Deborah's obvious lethal injuries.
Second, Citrus County contends the verdict as to both liability and damages was contrary to the manifest weight of the evidence and thus the trial court should have granted its motion for a new trial or to set aside the verdict. That is a determination exclusively for the trial court.[1]
As the appellate court, we must address the question whether the trial court abused its discretion in making those rulings. DeWitt v. Maruhachi Ceramics of America, Inc., 770 So.2d 709 (Fla. 5th DCA 2000); Clough v. Christopher, 711 So.2d 610 (Fla. 5th DCA 1998). If reasonable persons could differ as to the propriety of the trial judge's determinations, there is no abuse of discretion. Clough.
With regard to the jury's determination that Citrus County was twenty percent responsible for the accident in this case, we think there was adequate substantial *346 evidence to support the verdict. Numerous witnesses testified the road was under construction and there was a drop off in elevation between the newly paved surface of the road and the shoulder. The plaintiff's experts testified the drop off was three to five inches along the whole edge of the re-surfaced road. One of the police investigators testified there was a three inch drop off at the point the vehicle came back onto the road; others testified it was larger.
Building on that, the plaintiff's experts testified as to the hazardous nature of such a drop off for vehicles traveling at the speed limit. According to these experts, the County's traffic manual provided the highway department should allow no drop offs greater than three inches and the state manual indicates there should be no drop offs from the pavement to the shoulder of a road. This is adequate to support the jury's conclusion that accidents may be caused by drop offs, like the one established in this case, and thus are reasonably foreseeable.
With regard to the damage award, Citrus County argues there was no evidence to support the jury's award of $50,400 for net accumulations. "Net accumulations" are defined as follows:
'Net accumulations' means the part of the decedent's expected net business or salary income, including pension benefits, that the decedent probably would have retained as savings and left as part of her or his estate if the decedent had lived her or his normal life expectancy. `Net business or salary income' is the part of the decedent's probable gross income after taxes, excluding income from investments continuing beyond death, that remains after deducting the decedent's personal expenses and support of survivors, excluding contributions in kind.
§ 768.18(5), Fla. Stat.
The purpose of allowing a personal representative to recover net accumulations is to award what would have been earned over a decedent's life time, and theoretically was lost by the decedent's untimely death. Wilcox v. Leverock, 548 So.2d 1116 (Fla.1989). Net accumulations are more than replacement salary. They are supposed to represent what the decedent's estate would have been worth at death. This sum is reduced to present value so it can be invested by the survivors with the intention that when the estimated natural death of the decedent occurs, the sum will equal what the decedent's estate would have been worth, had he or she not died. Delta Airlines, Inc. v. Ageloff, 552 So.2d 1089 (Fla.1989).
In awarding net accumulations, the jury may consider the decedent's skills, age, health, earnings and propensity to save. See Wilcox. In this case, the testimony established the decedent was twenty-eight years old and worked as a cashier from thirty to forty hours a week, earning between $160.00 to $180.00 per week. She had dropped out of high school in the eleventh grade but was working on obtaining her GED. The decedent and her husband exhausted both of their paychecks to meet their living expenses and had no record of savings. They were "mostly trying to keep up with the kid and keeping everything paid," as McQuillin explained at trial.
Because the parties had no record of saving anything by the time of the accident and no evidence was presented that the decedent had any propensity to save in the future, or ability to do so, the award of net accumulations is speculative and based on insufficient or no evidence. See Tobias v. *347 Osorio, 681 So.2d 905 (Fla. 4th DCA 1996) (award of $150,000 for net accumulations was an abuse of jurors' discretion; although there was evidence as to where the decedent worked, there was no evidence of the decedent's salary or how much the decedent might have saved throughout his normal life expectancy); Snyergy Gas Corp. v. Johnson, 627 So.2d 539 (Fla. 3d DCA 1993) (award of $400,000 in net accumulations to estate reversed; although economic expert testified that decedent had twenty-six years of working life expectancy and that he would have saved six percent of his income per year, there was no evidence of the decedent's propensity to save or whether he had saved anything at all at the time of his death).
Third, Citrus County argues the trial court abused its discretion in failing to grant a new trial because the verdict was clearly excessive, primarily with regard to the pain and suffering and loss of parental companionship award made to the decedent's child. As noted above, it totaled 4.4 million dollars, before reduction by 80% due to the decedent's comparative negligence. We agree this award is very large.
However, a large damage award by itself is not indicative of an excessive or improper verdict. Tobias. If the jury's award is so extravagant that it shocks the judicial conscience, or is manifestly unsupported by the evidence or indicates the jury was influenced by passion, prejudice or other matters outside the record, the court in its discretion may set aside the verdict. Brown v. Estate of Stuckey, 749 So.2d 490 (Fla.1999); Tobias; Waddell v. Shoney's, Inc., 664 So.2d 1134 (Fla. 5th DCA 1995); Walt Disney World Co. v. Goode, 501 So.2d 622 (Fla. 5th DCA 1986), rev. dismissed, 520 So.2d 270 (Fla.1988).
In refusing to overturn this verdict, the trial judge noted the child had testified at length at trial regarding his grief and pain caused by the loss of his mother's companionship, how close they were, and how her loss had affected his life. Other witnesses also testified that this mother and child were unusually bonded and participated in numerous activities together. The trial judge concluded: "[A]s a young boy, he will now endure some of his childhood years without the instruction and guidance his mother used to provide him. It is clear based upon the verdict that the jury placed a significant value on these damages."
After reviewing the awards in other cases for loss of a child, parent or spouse, we conclude that this award, although on the outer limit in size, is not so excessive as to shock our composite judicial consciences.[2] And, we also conclude this *348 award is based on substantial and competent evidence. Who can place a dollar value on a human life, measured by the loss and grief of a loved one? That difficult decision is generally one for the jury or fact finder, not the appellate court. Accordingly, we find the trial court did not abuse its discretion in refusing to grant a new trial based on the excessiveness of the jury verdict. See Florida Power & Light Co. v. Goldberg, 27 Fla. L. Weekly D1177, 2002 WL 1021388 (Fla. 3d DCA May 22, 2002) (jury award reduced to ten million dollars to both parents for loss of daughter was reasonable and not excessive); Pierard v. Aerospatiale Helicopter Corp., 689 So.2d 1099 (Fla. 3d DCA 1997) (jury award of 6.7 million dollars for pain and suffering not excessive for damages to helicopter crash victim); Walt Disney World Co. (award of two million dollars to parents for loss of child not excessive as a matter of law).
Accordingly, we affirm this case in all regards, with the exception of the award for net accumulations. Since there was no competent substantial evidence to support that award, we reverse that portion of the verdict.
AFFIRMED in part; REVERSED in part.
GRIFFIN and ORFINGER, JJ., concur.
NOTES
[1] Brown v. Estate of Stuckey, 749 So.2d 490 (Fla.1999); E.R. Squibb and Sons, Inc. v. Farnes, 697 So.2d 825 (Fla.1997); Smith v. Brown, 525 So.2d 868 (Fla.1988).
[2] Alejandre v. Republic of Cuba, 996 F.Supp. 1239 (S.D.Fla.1997) (over forty-nine million dollars awarded to families of three men killed when their plane was shot down by Cuban air force during a humanitarian mission; award included eight million dollars to the daughter of one of the victims for mental pain and suffering and loss of parental companionship and guidance); Lopez v. Three Rivers Electric Cooperative, Inc., 92 S.W.3d 165 (Mo.App. E.D.2002) (damages awards of eleven million and ten million dollars for the death of flight engineer and pilot in a helicopter crash not excessive); Sanchez v. Mica Corp., ___ So.2d ___, 2002 WL 31753555 (Tx.Ct.App.2002) (award of five million dollars to decedent's two children for loss of parental companionship and pain and suffering not excessive); Lindsey v. Navistar Int'l Transp., 150 F.3d 1307 (11th Cir.1998) (award of five million dollars for intangible value of the life of the decedent was not clear error); West v. Maxwell, 2001 WL 789654 (Del.Super.Ct.2001) (jury award totaling almost 4.3 million dollars, including awards to spouse and child of over three million dollars, not excessive); Spohn Hospital v. Mayer, 72 S.W.3d 52 (Tx.Ct.App.2002) (decedent's two daughters awarded 3.2 million dollars for pain and mental anguish damages); Florida Emergency Physicians-Kang and Assoc., M.D., P.A. v. Parker, 800 So.2d 631 (Fla. 5th DCA 2001) (affirming award of three million dollars to daughter for loss of parental companionship and pain and suffering).