[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-13052

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 3, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-21807-CV-JAG

RAIZA BRAVO,
OSCAR RODRIGUEZ,
individually and as co-personal representatives
of the Estate and Survivors of Kevin Bravo
Rodriguez,

Plaintiffs-Appellees,

versus

UNITED STATES OF AMERICA,

Defendant-Appellant,

KENNETH KUSHNER, MD.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 3, 2009)

ON  PETITION FOR REHEARING

Before CARNES and WILSON, Circuit Judges, and STAGG,* District Judge.

PER CURIAM:

The appellants have filed a petition for rehearing en banc, which under 11th Cir. R. 35-5 is treated as including a petition for rehearing before the original panel. To the extent that it is a petition for rehearing en banc, no judge in active service having requested that the Court be polled, the petition is denied. To the extent it is a petition for panel rehearing, we deny the petition but take this opportunity to extend our opinion to clarify the methodology to be used in determining state law when there is no decision of the state supreme court on point.

In Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938), the Supreme Court held that federal courts sitting in diversity jurisdiction must apply substantive state law. That decision left open the question "of the effect to be given to decisions by lower state courts on points never passed on by the highest state court." King v. Order of United Commercial Travelers of Am., 333 U.S. 153, 158, 68 S. Ct. 488, 491 (1948). The answer came in a series of decisions, beginning two years after Erie, in which the Supreme Court instructed that

---

*Honorable Tom Stagg, United States District Judge for the Western District of Louisiana, sitting by designation.

2

"federal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise." Id., 68 S. Ct. at 491 (citing Six Cos. of Cal. v. Joint Highway Dist. No. 13 of Cal., 311 U.S. 180, 61 S. Ct. 186 (1940); West v. Am. Tel. & Tel. Co., 311 U.S. 223, 61 S. Ct. 179 (1940); Stoner v. N.Y. Life Ins. Co., 311 U.S. 464, 61 S. Ct. 336 (1940). The Court explained in its West opinion:

> State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of 'general law' and however much the state rule may have departed from prior decisions of the federal courts. . . . Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

West, 311 U.S. at 237, 61 S. Ct. at 183 (citations omitted).

One of the earliest, if not the earliest, pronouncements of our circuit in this area of the law came in Putman v. Erie City Manufacturing Co., 338 F.2d 911 (5th Cir.1964).[1] There, on examining Texas law, we found "cross-currents, especially in the decisions of the Courts of Civil Appeals, but a general trend" in

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

3

one direction. Id. at 915. We had this to say about how a federal court should decide what to do when there were "cross-currents" in state intermediate appellate court decisions:

> The case before us presents the type of situation Judge Clark has described as the most troublesome, the most unsatisfying in its consequences of all the situations in which Erie requires a federal court to ascertain state law. Here, although the trend in Texas may be as evident as Judge Levet found it to be, there is no decision of the Texas Supreme Court on the question at issue. The Court is forced, therefore, to look to all available data; for example, to such sources as the Restatements of Law, treatises and law review commentary, and the majority rule, keeping in mind that it must choose the rule which it believes the state court, from all that is known about its methods of reaching decisions is likely in the future to adopt.

Id. at 917 (internal quotation marks and footnotes omitted); see also McKenna v. Ortho Pharm. Corp., 622 F.2d 657, 662–63 (3d Cir. 1980); Pisciotta v. Old Nat'l Bancorp, 499 F.3d 629, 635 (7th Cir. 2007); Ariz. Elec. Power Coop., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995); Gilstrap v. Amtrak, 998 F.2d 559, 560 (8th Cir. 1993) Royal Coll. Shop, Inc. v. N. Ins. Co. of N.Y., 895 F.2d 670, 677 (10th Cir. 1990); Bailey v. V & O Press Co., 770 F.2d 601, 604 (6th Cir. 1985); Michelin Tires (Can.) Ltd. v. First Nat'l Bank of Boston, 666 F.2d 673, 682 (1st Cir. 1981).

We are, of course, bound to follow the instructions of the Supreme Court and our prior panel precedent on this matter, and nothing in our original opinion should

4

be read to the contrary. It follows that we are "bound" to follow an intermediate state appellate court "unless there is persuasive evidence that the highest state court would rule otherwise." King, 333 U.S. at 158, 68 S. Ct. 491. We have considered the decisions in Compania Dominicana de Aviacion v. Knapp, 251 So. 2d 18, 23 (Fla. 3d DCA 1971), Smith v. Goodpasture, 179 So. 2d 240, 242 (Fla. 2d DCA 1965), and Gresham v. Courson, 177 So. 2d 33, 39–40 (Fla. 1st DCA 1965), in light of all the other data about how the Florida Supreme Court might rule including, but not limited to, the decision of the Fifth District Court of Appeal in Citrus County v. McQuillin, 840 So. 2d 343 (Fla. 5th DCA 2003). After full consideration of "all the available data," West, 311 U.S. at 237, 61 S. Ct. at 183, we reiterate our conclusion that the $20,000,000 in non-economic damages awarded to Bravo and Rodriguez is excessive as a matter of Florida law.

Accordingly, we reiterate the ruling in our initial opinion that the judgment entered against the government is VACATED, and the case is REMANDED to the district court for further proceedings consistent with that opinion.

WILSON, Circuit Judge, dissenting:

To the extent that the majority concludes that we are bound by the substantive law of the State of Florida in consideration of this diversity case, pursuant to *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938), I agree. I also have no quarrel with the general principle that we are bound by decisions of Florida intermediate state appellate courts unless there is persuasive evidence that the Florida Supreme Court would rule otherwise. *See King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 158, 68 S. Ct. 488, 491 (1948). The problem here is that after recognizing these axioms, the majority then disregards the very Florida law that binds us.

In *Bravo v. United States*, 532 F.3d 1154 (11th Cir. 2008), the majority concluded that when reviewing Florida personal injury verdicts for excessiveness by considering the general trend and philosophy of similar cases, the comparative analysis must be confined to the published Florida appellate decisions in the judicial district in Florida where the case would have been heard if brought in state court. 532 F.3d at 1164. As far as I can determine, no Florida court has ever so held. I find no other appellate court, Florida or federal, that has so limited itself. Rather, historically, all of the Florida courts that have conducted these types of excessiveness reviews of personal injury verdicts take into consideration

6

all factually similar cases presented by the parties. *See, e.g., Loftin v. Wilson*, 67 So. 2d 185, 189-90 (Fla. 1953) (comparing a non-economic damages award to two Florida cases and five non-Florida cases, including two New York federal trial court decisions, two Missouri Supreme Court decisions, an Ohio Supreme Court decision, and "many other" cases reviewed in a treatise); *Sta-Rite Indus., Inc. v. Levey*, 909 So. 2d 901, 909 (Fla. 3d DCA 2004) (considering a New York federal district court case); *Citrus County v. McQuillin*, 840 So. 2d 343, 347 n.2 (Fla. 5th DCA 2003) (considering decisions from Delaware trial court (unpublished and unappealed), Texas appellate court, Missouri appellate court, and Florida federal district court); *City of Tamarac v. Garchar*, 398 So. 2d 889, 896 n.7 (Fla. 4th DCA 1981) (en banc on pet. for reh'g) (considering a decision from the United States Court of Appeals for the District of Columbia Circuit, two California state appellate cases, and a Nevada Supreme Court case), *overruled in part on other grounds by Seaboard Coastline R.R. Co. v. Addison*, 502 So. 2d 1241, 1242-43 (Fla. 1987); *Washington County Kennel Club, Inc. v. Edge*, 216 So. 2d 512, 517 (Fla. 1st DCA 1968) (considering Missouri and Georgia appellate court decisions). Likewise, our own federal courts have not limited their analyses to published appellate decisions the way that the majority has. *See, e.g., Fairhurst v. United States*, No. 3:03CV601/RS, 2006 WL 2190553, at *4 (N.D.

7

Fla. Aug. 1, 2006) (considering jury verdicts and settlement awards); *Turner v. United States*, No. 3:03-CV-709-J-25TEM, 2005 WL 2077297, at \*\*8-9 (M.D. Fla. Aug. 26, 2005) (considering reported jury verdicts), *aff'd in part, vacated in part, rev'd in part on other grounds*, 514 F.3d 1194 (11th Cir. 2008); *Grayson v. United States*, 748 F. Supp. 854, 863-66 (S.D. Fla. 1990) (considering jury verdicts and settlements), *aff'd in part, vacated in part*, 953 F.2d 650 (11th Cir. 1992) (unpublished table decision); *Williams v. United States*, 681 F. Supp. 763, 764-66 (N.D. Fla. 1988) (considering jury verdicts).  The relevant case law demonstrates that in their excessiveness reviews, Florida state and federal courts have not only considered unpublished as well as published decisions, but also have considered decisions from outside Florida, let alone decisions from outside the relevant DCA in Florida.

Turning to the comparative analysis, there have been higher non-economic damages awards in similar cases. *See Gen. Motors Corp. v. McGee*, 837 So. 2d 1010, 1039 (Fla. 4th DCA 2002) (upholding a $30 million dollar award for pain and suffering to the parents of a boy burned in a fire, which resulted in the boy's death); *Navarro v. Austin*, No. 02-6154 (Fla. Cir. Ct. 2006) (involving a jury award of over $100 million in damages, $46.5 million of which was for the injured plaintiff's past and future pain and suffering and $52.5 million of which

8

was for the wife's past and future loss of her husband's services, comfort, society, and affection); *Korzeniowski v. Eagleman*, No. CL 00-4828 AO, 2004 WL 3206914 (Fla. Cir. Ct. 2004) (involving a child who was born with a brain injury due to medical negligence resulting in a $31 million non-economic damage award—$17 million for the child's past and future pain and suffering, $7 million for the mother's loss of filial consortium, and $7 million for the father's loss of filial consortium); *Hinton v. 2331 Adams St. Corp.*, No. 01-012933(12) (Fla. Cir. Ct. 2003) (involving a two-year-old child who suffered severe brain damage resulting in a $45 million combined non-economic damage award—$35 million for the child's past and future pain and suffering, $5 million for the mother's loss of filial consortium, and $5 million for the father's loss of filial consortium). I also note that in a recent case, *Gutierrez v. United States*, No. 07-56708, 2009 WL 784266, at *1 (9th Cir. March 26, 2009) (mem.), the Ninth Circuit held, in a Federal Torts Claims Act ("FTCA") case like this one, that "an award of $31 million dollars for non-economic damages is substantial, but in the tragic circumstances of this case, we cannot say that the district court's award was clear error."

Upon review, we were only to reverse the award if we found clear error. *See Ferrero v. United States*, 603 F.2d 510, 512 (5th Cir. 1979). Because this

was an FTCA case arising out of Florida, we were to follow and apply Florida law. *See Johnson v. United States*, 780 F.2d 902, 907 (11th Cir. 1986). Under Florida law, the award could be reversed only if it: (1) "[was] so extravagant that it shock[ed] the judicial conscience," (2) "[was] manifestly unsupported by the evidence," or (3) "indicate[d] the jury was influenced by passion, prejudice or other matters outside the record. . . ." *McQuillin*, 840 So. 2d at 347 (citations omitted).

The majority opinion strikes the $20 million award on the sole ground of it being shocking to the judicial conscience.[1] *See Bravo*, 532 F.3d at 1161. The majority reasoned that the award did not "bear a reasonable relation to the philosophy and general trend of prior decisions in such cases." *Id.* at 1162 (citing *Johnson*, 780 F.2d at 907). By confining its review of compensable awards to Florida Third District Court of Appeals published opinions, the majority was able to disregard similar awards in similar cases. Because I disagree with that methodology, and the departure from clear Florida law, I dissent.

If we were faithful to the analysis of the Florida courts, we would find that the district court's non-economic damages award in this case falls comfortably

---

[1] The verdict here was not rendered by an inflamed and impassioned jury. It was a dispassionate verdict by a United States District Judge who entered the award after an 11-day bench trial. The verdict does not shock the judicial conscience.

within the general trend of prior decisions in similar cases. Consequently, I am unable to join in the conclusion that the $20 million verdict for pain and suffering awarded to the plaintiffs for the loss of their child's consortium is so grossly exorbitant as to require a reversal.