VAN NORTWICK, J.
In this Engle[1] progeny case, R.J. Reynolds Tobacco Company (RJR) appeals a final judgment following a jury verdict awarding Appellee, Lyantie Townsend, as personal representative of the estate of Frank Townsend, her late husband, $10.8 million in compensatory damages and $80 million in punitive damages for the death of Mr. Townsend. Mr. Townsend died from lung cancer and was a long-time smoker of cigarettes manufactured by *310 RJR. The jury found RJR 51% responsible for Mr. Townsend’s death and, based on that apportionment of fault (and after denying RJR’s motion for new trial or remittitur), the trial court entered judgment against RJR for $46,808 million, which comprised approximately $5.5 million in compensatory damages and $40.8 million in punitive damages.[2]
In this appeal, RJR contends that 1) it is entitled to a new trial because of several improper comments by Appellee’s counsel in closing argument; 2) the use of the Engle findings to establish elements of Appellee’s claims violates Florida law and due process; 3) Appellee failed to prove reasonable reliance by Mr. Townsend on any statement or act of RJR or its predecessor companies; 4) the compensatory damage award is excessive; and 5) the punitive damage award is excessive and violates due process.
With respect to the “closing argument” issue, we hold that by waiting until the end of closing argument to object to the argument and move for mistrial and by failing to object specifically to distinct portions of the argument, RJR failed to preserve this issue for appellate review. Engle, 945 So.2d at 1271-74; see also Murphy v. Int’l Robotic Sys., Inc., 766 So.2d 1010 (Fla.2000). Accordingly, we find no abuse of discretion in the denial of the motion for new trial based on the closing argument. We affirm the second and third issues based on Martin, 58 So.3d at 1060.[3] For the reasons that follow, we affirm the compensatory damage award and we reverse and remand the punitive damage award for the limited purpose of permitting Appellee to choose between a new jury trial solely to determine punitive damages or acceptance of a remittitur judgment to be determined by the trial court in accordance with this opinion.

COMPENSATORY DAMAGES

RJR contends the compensatory damage award is excessive and, therefore, the trial court should have granted its motion for a new trial on damages or remittitur. We review the trial court’s denial of the motion for an abuse of discretion. See Engle, 945 So.2d at 1263; McCarthy Bros. Co. v. Tilbury Constr., Inc., 849 So.2d 7, 9 (Fla. 1st DCA 2003).
The purpose of compensatory damages is “to make the injured party whole to the extent that it is possible to measure his injury in terms of money.” Mercury Motors Exp., Inc. v. Smith, 393 So.2d 545, 547 (Fla.1981); see also Cooper Indus., Inc. v. Leatherman Tool Group, 532 U.S. 424, 432, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001) (explaining that compensatory damages “are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant’s wrongful conduct”). The compensatory damage award in this case comprises only non-economic dam *311 ages — e.g., mental pain and suffering and loss of consortium — suffered by Appellee due to the death of her husband, Mr. Townsend. These damages are inherently difficult to measure and, as explained by the Florida Supreme Court, our judicial system places great faith in the jury’s ability to assess the amount of these damages:
Jurors know the nature of pain, embarrassment and inconvenience, and they also know the nature of money. Their problem of equating the two to afford reasonable and just compensation calls for a high order of human judgment, and the law has provided no better yardstick for their guidance than their enlightened conscience. Their problem is not one of mathematical calculation but involves an exercise of their sound judgment of what is fair and right.
Braddock v. Seaboard Air Line R. Co., 80 So.2d 662, 668 (Fla.1955); accord Citrus County v. McQuillin, 840 So.2d 343, 348 (Fla. 5th DCA 2003) (“Who can place a dollar value on a human life, measured by the loss and grief of a loved one? That difficult decision is generally one for the jury or fact finder, not the appellate court.”).
“The fact that a damage award is large does not in itself render it excessive nor does it indicate that the jury was motivated by improper consideration in arriving at the award.” Allred v. Chittenden Pool Supply, Inc., 298 So.2d 361, 365 (Fla. 1974). And “[n]ot every verdict which raises a judicial eyebrow should shock the judicial conscience.” Laskey v. Smith, 239 So.2d 13, 14 (Fla.1970). A verdict should not be declared excessive “merely because it is above the amount which the court itself considers the jury should have allowed.” Bould v. Touchette, 349 So.2d 1181, 1184 (Fla.1977). The verdict should be disturbed only when “it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.” Id. at 1184-85.
These general principles are consistent with the legislative policy expressed in section 768.74, Florida Statutes (2009). This statute recognizes that “the reasonable actions of a jury are a fundamental precept of American jurisprudence and that such actions should be disturbed or modified with caution and discretion.” § 768.74(6), Fla. Stat. But the statute also requires courts to give “close scrutiny” to damage awards, section 768.74(3), Florida Statutes, and it lists several criteria for the court to consider in determining whether an award “exceeds a reasonable range of damages.” § 768.74(5), Fla. Stat. The criteria in subsection (5) include whether the award is “supported by the evidence,” whether the award “bears a reasonable relation to the amount of damages proved and the injury suffered,” and whether the amount of the award is “indicative of prejudice, passion, or corruption” on the part of the jury.
Although the $10.8 million compensatory damage award in this case[4] is higher than the non-economic damage awards affirmed by this Court in the other Engle progeny cases that we have reviewed to date[5], we cannot say that the award obvi *312 ously exceeds the “reasonable range within which the jury may properly operate.” Bould, 349 So.2d at 1185. The highest post-Engle compensatory damages awards that have passed appellate muster thus far are the $7.8 million award in Liggett Group, 60 So.3d at 1078, and the $5 million award in Martin, 53 So.3d at 1066. We are persuaded from our review of the record that a proper evidentiary basis existed to justify the award and that, despite its size, it was not based merely on passion or prejudice.
The jury observed Appellee testify and heard her first-hand account of her life with Mr. Townsend. She and Mr. Townsend were wed young in 1956, enjoyed a very close relationship during their 39-year marriage, and were always together until Mr. Townsend became ill. Appellee was required to remain in Ocala to work to provide support for the couple while Mr. Townsend traveled to Chicago for medical treatment and surgery relating to his lung cancer, and then she cared for him as he lay dying during the final six months. Ap-pellee described Mr. Townsend’s suffering and premature death at age 59 from smoking, a tragic circumstance that had, and is likely to continue to have, an acute impact on Appellee for the rest of her life. Mr. Townsend was diagnosed just when Appel-lee was about to join him in retirement and realize their life-long dream of traveling together. Appellee has not remarried.
With this evidence, the jury was entrusted with the “difficult decision” of effectively placing a dollar value on Mr. Townsend to Appellee. See McQuillin, 840 So.2d at 348. Although the $10.8 million awarded by the jury is certainly at the outer limit of reasonableness for a case such as this, the award is not so inordinately large that it shocks our collective judicial conscience. Cf. id. at 347 (affirming $4.4 million non-economic damage award, but noting the award was “on the outer limit in size”). Judged by the factors set forth in section 768.74(5), Florida Statutes (2009), the amount of compensatory damages in this case is not beyond reason. Accordingly, we find no abuse of discretion in the trial court’s refusal to second-guess the jury’s award of compensatory damages.

PUNITIVE DAMAGES

RJR contends the punitive damage award in this case is excessive and violates due process.[6] Our review of this issue is de novo. See Engle, 945 So.2d at 1263; Martin, 53 So.3d at 1071.
The purpose of punitive damages is “not to further compensate the plaintiff, but to punish the defendant for its wrongful conduct and to deter similar misconduct by it and other actors in the future.” Owens-Coming Fiberglas Corp. v. Ballard, 749 So.2d 483, 486 (Fla.1999). The amount of punitive damages to be awarded is an issue left to the discretion of the jury. Id. at 486-87 (quoting Wackenhut Corp. v. Canty, 359 So.2d 430, 435-36 (Fla.1978)). However, the imposition of a punitive damage award is subject to constitutional limitations because “[t]he Due Process Clause of the Fourteenth Amendment prohibits a state from imposing a ‘grossly excessive’ *313 punishment on a tortfeasor.” BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 562, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); see also Martin, 53 So.3d at 1071-72 (quoting Cooper Indus., 532 U.S. at 433-34, 121 S.Ct. 1678). “[T]he relevant constitutional line is ‘inherently imprecise.’ ” Cooper Indus., 532 U.S. at 434, 121 S.Ct. 1678. The court in Gore, 517 U.S. at 574-85, 116 S.Ct. 1589, identified “three guideposts” for assessing the reasonableness of punitive damages: (1) the degree of reprehensibility of the defendant’s conduct; (2) the ratio between the punitive and compensatory damages; and (3) civil and criminal penalties for similar conduct. In Martin, we set forth the criteria for evaluating punitive damages under Florida law, as follows:
[T]he three criteria a punitive damage award must satisfy under Florida law to pass constitutional muster are: (1) “the manifest weight of the evidence does not render the amount of punitive damages assessed out of all reasonable proportion to the malice, outrage, or wantonness of the tortious conduct”; (2) the award “bears some relationship to the defendant’s ability to pay and does not result in economic castigation or bankruptcy to the defendant”; and (3) a reasonable relationship exists between the compensatory and punitive amounts awarded.
53 So.3d at 1072 (quoting Engle, 945 So.2d at 1263-64).
As to the first Martin criterion, we agree with Appellee that the $40.8 million punitive damage award in this case is not “out of all reasonable proportion” to RJR’s conduct. The record of this case, like the record in Martin, 53 So.3d at 1070-72, is replete with evidence of the decades-long, wanton and intentional conduct by RJR in vigorously, persuasively marketing to the public (including young people) a product the company knew was addictive; willfully concealing the serious health hazards posed by cigarette smoking; affirmatively deceiving the public into believing that cigarettes may not be harmful; and refusing to remove certain ingredients in cigarettes (such as nicotine) that the company counted on to sustain sales.[7]
As to the second criterion, we agree with Appellee that the $40.8 million punitive damage award will not cause RJR’s financial ruin because RJR’s stipulated net worth between 2006 and 2008 averaged approximately $8 billion. We are aware of the significant potential liability that RJR faces from thousands of other pending Engle progeny cases, but our review is limited to the impact of the award in this case on RJR. See Martin, 53 So.3d at 1072. Indeed, we have no way of knowing how many of the other Engle progeny cases will result in verdicts for the plaintiff, whether punitive damages will be awarded in those cases[8], and how much any such awards will be. Moreover, we *314 note that protections exist against successive punitive damage awards that RJR presumably will be able to raise in future cases. See Owens-Corning, 749 So.2d at 488 n. 7 (explaining that “punitive awards in other cases is a proper factor for juries to consider in deciding the amount of punitive damages,” but noting that the defendant is required to present evidence on the amount of punitive damages actually paid); W.R. Grace & Co.-Conn. v. Waters, 638 So.2d 502, 506 (Fla.1994) (requiring a bifurcated trial for punitive damages and explaining that, at the second stage of the trial, the defendant could introduce evidence of prior punitive damage awards in mitigation and “build a record for a due process argument based on the cumulative effect of prior awards”); § 768.73(2), Fla. Stat. (2009) (precluding successive punitive damage awards against a defendant for the same conduct under certain circumstances).
As to the third criterion, the typical measure used to determine whether a “reasonable relationship” exists between the punitive and compensatory damages is the ratio of the awards. See Gore, 517 U.S. at 580, 116 S.Ct. 1589; Martin, 53 So.3d at 1071-72. Although there is no bright-line standard, the Florida Supreme Court observed in Engle that “[s]ingle-digit [ratios] are more likely to comport with due process, while still achieving the State’s goals of deterrence and retribution.” Engle, 945 So.2d at 1264-65 (quoting State Farm Mut. Auto. Ins. Co. v. Campbell 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)). The reasoning in Engle accords with the United States Supreme Court’s statement in State Farm that “in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.” 538 U.S. at 425, 123 S.Ct. 1513.
Here, the ratio between the punitive damage award ($40.8 million) and the pre-apportionment compensatory damage award ($10.8 million) is 3.7 to 1, which is less than the 5 to 1 pre-apportionment ratio we upheld in Martin.[9] The 3.7 to 1 ratio is also less than the 4 to 1 ratio the United States Supreme Court has suggested “might be close to the line of constitutional impropriety.” See State Farm, 538 U.S. at 425, 123 S.Ct. 1513 (citing Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 23-24, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), and Gore, 517 U.S. at 581, 116 S.Ct. 1589, and referring to the long history of statutes providing only for up to quadruple damages, as “instructive” as to the multipliers likely to comport with due process). Nevertheless, we hold that the $40.8 million punitive damage award in this case is constitutionally excessive in view of the substantial $10.8 million compensatory damages award.
Both the compensatory and punitive damage awards in this case are significantly higher than any other damage awards approved by a Florida appellate court in a case involving the death of a single smoker.[10] The $40.8 million award in this *315 case is approximately 60% higher than the $25 million award in Martin, which is the highest punitive damage award to be affirmed thus far in an Engle progeny case. Although the record contains ample evidence of RJR’s wanton conduct in marketing cigarettes, we can find nothing in the record to suggest that RJR’s conduct toward Mr. Townsend was any more wanton or reprehensible than it was toward Mr. Martin. The conduct here is essentially the same conduct the Martin jury found to justify “only” $25 million in punitive damages. See Gresham v. Courson, 177 So.2d 33, 39-40 (Fla. 1st DCA 1965) (“[I]f the verdict and resulting judgment do not bear a reasonable relation to the philosophy and general trend of prior decisions in such cases, the judgment must either be set aside and a new trial awarded or a remitti-tur imposed reducing it to an amount which the appellate court in the exercise of its discretionary powers and in good conscience deems sustainable.”). We do not believe that it is necessary, however, for the punitive damages awarded here to be the precise amount of, or capped by the amount of, the punitive damages in Martin.
The Supreme Court has been “reluctant to identify concrete constitutional limits on the ratio between harm ... to the plaintiff and the punitive damages award,” State Farm, 538 U.S. at 424, 123 S.Ct. 1513. Nevertheless, it has identified a circumstance in which caution is required: “When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee.” State Farm, 538 U.S. at 425, 123 S.Ct. 1513. As the Supreme Court noted in Gore, however, there is no “simple mathematical formula” that marks the constitutional line. Gore, 517 U.S. at 582, 116 S.Ct. 1589. See also State Farm, 538 U.S. at 425, 123 S.Ct. 1513 (“We decline again to impose a bright-line ratio which a punitive damages award cannot exceed.”); Martin, 53 So.3d at 1072 (rejecting RJR’s argument that the United States Supreme Court adopted a bright-line 1 to 1 ratio as a limit on punitive damages). We find instructive the reasoning of the Eighth Circuit in Boerner v. Brown & Williamson Tobacco Co., 394 F.3d 594 (8th Cir.2005). There the court found that the amount of the punitive damages award was excessive under both state law and federal due process guarantees. Applying the three Gore guidelines as restated in State Farm, the Boemer court found that the punitive award of $15 million was “excessive when measured against the substantial compensatory damages award.” Id. at 603. The court explained that:.
[notwithstanding the absence of a simple formula or bright-line ratio, the general contours of our past decisions lead to the conclusion that a low ratio is called for here.... Factors that justify a higher ratio, such as the presence of an “injury that is hard to detect” or a “particularly egregious act [that] has resulted in only a small amount of economical damages,” are absent here.... [T]here is no evidence that anyone at American Tobacco intended to victimize its customers .... Accordingly, given the $4,025,000 compensatory damages award in this case, we conclude that a ratio of approximately 1:1 would comport with the requirements of due process. Thus, we conclude that the punitive damages award must be remitted from $15 million to $5 million.
Id. (citations omitted).
Here, the $10.8 million compensatory damage award — which is substantial by any measure — justifies a lower ratio than 3.7 to 1. Although we find the $40.8 punitive damage award excessive under the Gore and State Farm criteria, a 1 to 1 ratio is unwarranted, however, because the *316 evidence of the extreme reprehensibility and wantonness of RJR’s conduct was substantial. See Gore, 517 U.S. at 575, 116 S.Ct. 1589 (noting that “the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant’s conduct”).
In sum, applying the Gore and State Farm criteria, in view of the substantial compensatory damages awarded here, we agree with RJR that the $40.8 million punitive damage award in this case is constitutionally excessive. Thus, it was error to deny RJR’s motion for new trial or remit-titur. Accordingly, we reverse and remand the punitive damages award for the limited purpose of permitting Appellee to choose between a new jury trial solely to determine punitive damages or acceptance of a remittitur judgment on the punitive damages award to be established by the trial court.
AFFIRMED, in part, REVERSED, in part, and REMANDED for further proceedings consistent with this opinion.
MARSTILLER, J., concurs; WETHERELL, J., concurs in part and dissents in part with written opinion.

. Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006).

. Punitive damages are not typically subject to apportionment based on comparative fault, see R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060, 1066 (Fla. 1st DCA 2010), rev. den., 67 So.3d 1050 (Fla.2011), but the record indicates that Appellee consented to the trial court's reduction of the punitive damage award to $40.8 million. Nothing in the record suggests that the trial court ordered the reduction because it found the $80 million award excessive and a $40.8 million award appropriate; rather, it appears the reduction was simply the result of a mathematical calculation by the trial court based on the comparative fault percentage found by the jury: $80 million x 51% = $40.8 million.

. To the extent the district court in R.J. Reynolds Tobacco Co. v. Brown, 70 So.3d 707 (Fla. 4th DCA 2011), disagreed with our decision in Martin because certain jury instructions were not given in Martin, the record here reflects that at Appellee's trial, the judge gave the same instruction as was given in Brown.

. We are using the jury’s $10.8 million compensatory award, before the reduction due to Mr. Townsend’s 49% comparative negligence. See McQuillin, 840 So.2d at 347.

. R.J. Reynolds Tobacco Co. v. Gray, 63 So.3d 902 (Fla. 1st DCA) (citing Martin in affirming a $7 million non-economic damage award), rev. den., 67 So.3d 1050 (Fla.2011); R.J. Reynolds Tobacco Co. v. Hall, 70 So.3d 642 (Fla. 1st DCA) (citing Martin in affirming a $5 million non-economic damage award), rev. den., 67 So.3d 1050 (Fla.2011); Liggett Group LLC v. Campbell, 60 So.3d 1078 (Fla. 1st DCA) (citing Martin in affirming a $7.8 mil *312 lion non-economic damage award), rev. den., 67 So.3d 1050 (Fla.2011); Martin, 53 So.3d at 1066 (affirming a $5 million pre-apportionment, non-economic damage award).

. RJR also contends that the punitive damage award was based on "improper considerations,” including the Engle findings, youth marketing not seen or relied on by Mr. Townsend, and argument of counsel. We reject these claims without further comment. Accord Martin, 53 So.3d at 1070 ("We are satisfied Mrs. Martin produced sufficient evidence independent of the Engle findings to allow the jury to find RJR guilty of intentional misconduct or gross negligence.”).

. Harm to nonparties caused by the conduct that harmed the plaintiff is admissible and relevant to show the extent of reprehensibility of the defendant's conduct. Philip Morris USA v. Williams, 549 U.S. 346, 355, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007). While the jury may consider such evidence when evaluating a defendant's reprehensibility, "a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties.’' Id. Punishing a defendant for harm caused to nonparties “creates the possibility of multiple punitive damages awards for the same conduct.” State Farm Mut. Auto. Ins. v. Campbell, 538 U.S. 408, 423, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). The jury here was instructed on the permissible uses of evidence of harm to non-parties.

. We note that in one of the Engle progeny cases recently affirmed by this Court, the jury awarded $7.8 million in compensatory damages and no punitive damages. See Liggett Group, 60 So.3d at 1078.

. The 7.58 to 1 ratio referenced in Martin was based on the post-apportionment compensatory damages of $3.3 million, not the $5 million awarded by the jury. See 53 So.3d at 1072. Here, the ratio would be 7.4 to 1 if the post-apportionment damages of approximately $5.5 million were used.

. Additionally, Appellee has brought to our attention only two other cases in the entire country involving the death of a single smoker in which a punitive damage award higher than the award in this case has been approved on appeal: Williams v. Philip Morris USA, Inc., 344 Or. 45, 176 P.3d 1255 (2008) ($79.5 million), and Boeken v. Philip Morris, Inc., 127 Cal.App.4th 1640, 26 Cal.Rptr.3d 638 (2005) ($50 million).