Van Nortwick, J.,
concurring.
I concur completely with the majority opinion. I write separately only to provide guidance for any retrial by discussing briefly two other issues raised on appeal which, in my view, could have constituted reversible error.

$700 Million Punitive Damages Award

Appellants argue that “[t]he $700 million punitive damages award ... was so excessive that it violated [appellants’] right to due process guaranteed by the United States Constitution.” As the United States Supreme Court has explained:
Despite the broad discretion that States possess with respect to the imposition of *1156 criminal penalties and punitive damages, the Due Process Clause of the Fourteenth Amendment to the Federal Constitution imposes substantive limits on that discretion. That Clause makes the Eighth Amendment’s prohibition against excessive fines and cruel and unusual punishments applicable to the States. The Due Process Clause of its own force also prohibits the States from imposing “grossly excessive” punishments on tort-feasors.
Cooper Indus., Inc. v. Leatherman Tool Group, 532 U.S. 424, 433-34, 121 S.Ct. 1678, 1684, 149 L.Ed.2d 674 (2001).
In federal due process challenges to punitive awards, the United States Supreme Court has instructed that three guideposts are to be considered: (1) the degree of reprehensibility of the defendant’s misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418, 123 S.Ct. 1513, 1520, 155 L.Ed.2d 585 (2003). Under Florida law, a punitive damages award must satisfy three criteria, as follows:
(1) the manifest weight of the evidence does not render the amount of punitive damages assessed out of all reasonable proportion to the malice, outrage, or wantonness of the tor-tious conduct;
(2) the award bears some relationship to the defendant’s ability to pay and does not result in economic castigation or bankruptcy to the defendant; and
(3)a reasonable relationship exists between the compensatory and punitive amounts awarded.
R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060, 1072 (Fla. 1st DCA 2010) (quoting Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006)).
Even if the $700 million punitive damages award could satisfy the first two Martin criteria, it does not meet the third Martin criterion under this court’s reasoning in R.J. Reynolds Tobacco Co. v. Townsend, 90 So.3d 307 (Fla. 1st DCA 2012). In Townsend, this court reversed a $40.8 million punitive damage award as excessive even though the ratio of punitive damages to compensatory damages was lower than the ratio this court previously had approved in Martin. The Townsend court found the punitive damages award “constitutionally excessive in view of the substantial $10.8 million compensatory damages award.” 90 So.3d at 314. In reaching our decision, this court relied on State Farm, 538 U.S. at 425, 123 S.Ct. 1513, in which the Supreme Court stated: “When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee.”
Townsend was an Engle-progeny[1] case, and included claims for negligence, strict liability, fraudulent concealment, and conspiracy to commit fraud. In comparison, only two claims are involved here — common law negligence and abuse/negleet/ex- *1157 ploitation of a vulnerable person — neither of which resulted in Webb’s death. Townsend involved a $10.8 million compensatory award. The compensatory damages awarded here were $200 million. In my view, under this court’s reasoning in Townsend as well as the United States Supreme Court’s reasoning in State Farm and related cases, the $700 million punitive damages award would be constitutionally excessive.

Jury Instructions on Punitive Damages

Appellants argue that the trial court improperly “directed” the jury to find for Webb on several elements of punitive damages. The issue of appellants’ liability under the claim for punitive damages, however, was decided by way of the defaults entered by the trial court. Thus, the only issue for the jury’s determination was how much — if anything — Webb should be awarded in punitive damages. The instructions given by the trial court were consistent with the instructions relating to the first stage of the bifurcated procedure in Florida Standard Jury Instruction (Civil) 503.1.
However, Florida Standard Jury Instruction 503.1 also provides instruction for the second stage of a bifurcated trial, including the following directive:
You are to decide the amount of punitive damages, if any, to be assessed as punishment against (defendant(s)) and as deterrent to others. This amount would be in addition to the compensatory damages you have previously awarded. In making this determination, you should consider the following:
You may in your discretion decline to assess punitive damages.
(Emphasis added).
Here, the trial court failed to read Standard Instruction 503.1 relating to the jury’s discretion to assess punitive damages or not. Also problematic are the instructions which were actually given to the jury. The trial court instructed the jury: “[t]he Court has determined and now instructs you that the defendants ... had a specific intent to harm ... Webb[.]” The court also instructed the jury that: “[t]he Estate of Joseph Webb is therefore entitled to recover ... punitive damages .... ” The court further instructed: “[t]he conduct of the employees or agents of the defendants, Trans Healthcare, Incorporated, and Trans Health Management, Incorporated, was so reckless or wanton in care that it constituted a conscious disregard or indifference to the life, safety, or rights of Joseph Webb.”
In considering the jury instructions given below, I find instructive the Fourth District’s decision in Humana Health Ins. Co. of Fla., Inc. v. Chipps, 802 So.2d 492, 495-96 (Fla. 4th DCA 2001). Like the instant case, the plaintiff therein, Chipps, had obtained a default as to liability for punitive damages, and trial proceeded on the amount of punitive damages. Id. at 496. The Fourth District discussed the jury instructions given by the trial court:
The trial judge instructed the jury that Humana’s conduct was “so gross and flagrant as to show a reckless disregard of human life or the safety of persons exposed to the effects of its conduct.” The court also told the jury that Huma-na’s conduct “showed such an entire lack of care that Humana must have wantonly and recklessly disregarded the safety and welfare of the public.” The court did not instruct the jury that it had the discretion to decline to assess punitive damages or to award only a nominal amount.
Id. The Humana court compared the instructions given by the trial court to the *1158 standard instruction on punitive damages concluding:
The jury instructions here interfered with the jury’s fact-finding function by characterizing and summarizing the evidence. While there is overlap between the issues of entitlement to punitive damages and the amount of such damages to be awarded, care should have been taken to let the jury arrive at its own decision regarding the egregiousness of the defendant’s conduct.
Id. In other words, because the trial court did not let the jury decide the egregiousness of the defendant’s conduct, “the jury instructions invaded the province of the jury by characterizing the conduct of the defendants.” Id. 495-96.
As in Chipps, the trial court below did not instruct the jury that it had discretion to award no punitive damages; rather, it instructed the jury that Webb was “entitled” to such an award which constitutes, in effect, an instruction that it must award some amount. I agree "with appellants that this instruction invaded the jury’s province to use its own discretion in determining the award.

. In Engle v. Liggett Group, Inc., 945 So.2d 1246 (Fla.2006), the Florida Supreme Court explained that the amount of punitive damages assessed must not be out of all reasonable proportion to the malice, outrage, or wantonness of the tortious conduct and that an award of punitive damages must bear some relationship to the defendant's ability to pay and does not result in economic castigation or bankruptcy of the defendant. Further, the Supreme Court held that an award of punitive damages must bear a reasonable relationship to the award of compensatory damages.