[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 30, 2009
THOMAS K. KAHN
CLERK

No. 06-13052

D. C. Docket No. 04-21807-CV-JAG

RAIZA BRAVO,
OSCAR RODRIGUEZ,
individually and as co-personal representatives
of the Estate and Survivors of Kevin Bravo
Rodriguez

Plaintiffs-Appellees,

versus

UNITED STATES OF AMERICA,

Defendant-Appellant,

KENNETH KUSHNER, MD.,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Florida

(September 30, 2009)

Before DUBINA, Chief Judge, EDMONDSON, TJOFLAT, BIRCH, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON, and PRYOR, Circuit Judges.

O R D E R:

The Court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure), the Suggestion of Rehearing En Banc is **DENIED.**

    /s/ Joel F. Dubina
CHIEF JUDGE

CARNES, Circuit Judge, concurring in the denial of rehearing en banc:

In his opinion dissenting from the denial of rehearing en banc, Judge Wilson criticizes the panel opinion for determining, as a matter of Florida law, that in deciding whether an award for non-economic damages is excessive the focus should be on Florida appellate court decisions either affirming or reversing awards challenged on that ground. The panel opinion explains at some length its conclusion that jury awards that were not size-tested on appeal were not to be considered. Bravo v. United States, 532 F.3d 1154, 1163–68 (11th Cir. 2008). It cites decisions of three Florida District Courts of Appeal that, in judging whether awards were excessive, limited their consideration of other awards to those that had been challenged on appeal. See id. at 1164. And it explains why considering jury awards that were not appealed on excessiveness grounds makes little or no sense. See id. at 1166–67.

Instead of addressing the panel opinion's authorities and reasoning head on, the dissenting opinion asserts that in deciding that the award in this case was excessive under Florida law the panel limited its consideration to "awards reflected only in *published* appellate decisions in a limited locale." Dissent at 1301 (emphasis added). To the extent that it implies the panel disregarded unpublished Florida appellate court decisions, the dissenting opinion is mistaken.

3

The panel did not disregard any Florida appellate decision because it was not published. We considered every Florida decision the parties cited or we could find that had upheld or rejected an award of non-economic damages on excessiveness grounds. There were no relevant unpublished Florida appellate court decisions cited to us by either side, and we could not find any. The reason probably is that the Florida appellate courts do not issue unpublished opinions.[1]

The dissenting opinion is also mistaken to the extent that it asserts that the panel limited its consideration to published appellate decisions arising from judgments in any one locale in Florida. We considered every award excessiveness decision from every District Court of Appeal that was cited to us or that we could find. Bravo, 532 F.3d at 1164–65 (considering award excessiveness decisions from the First, Second, and Third District Courts of Appeal); id. at 1168–69 (citing award excessiveness decisions from the Third, Fourth, and Fifth District Courts of Appeal); see also Bravo v. United States, 577 F.3d 1324, 1326 (11th Cir. 2009) (explaining, in an extension of the opinion denying rehearing, that we had considered damage excessiveness decisions of the First, Second, and Third District Courts of Appeal "in light of all the other data about how the Florida

_____

[1]Florida appellate courts do issue one-line per curiam affirmed (PCA) opinions stating without explanation that the judgment of the trial court is affirmed, and those are not "published." None of those was cited to us.

4

Supreme Court might rule including, but not limited to, [a] decision of the Fifth District Court of Appeal").

The recent decision in <u>Limone v. United States</u>, 579 F.3d 79 (1st Cir. 2009), is the centerpiece of the dissenting opinion. It asserts that in <u>Limone</u> "[t]he First Circuit rejected the *very same* argument adopted by the majority in <u>Bravo</u>." Dissent at 32. Impossible. In issuing its decision in <u>Limone</u> the First Circuit was required to and did apply Massachusetts law to a case that arose in Boston, Massachusetts. <u>Limone</u>, 579 F.3d at 88–89 ("Here, both the allegedly tortious conduct and the harm complained of occurred in Massachusetts. Massachusetts law, therefore, supplies the beacon by which we must steer."); <u>id.</u> at 103 ("We approach the awards at issue here mindful that, in an FTCA case, both the nature of allowable damages and the measure of those damages are drawn from state law."); <u>see also</u> <u>id.</u> at 86 ("Under Massachusetts law . . . ."); <u>id.</u> at 89 (same); <u>id.</u> at 91 (same); <u>id.</u> at 94 (same); <u>id.</u> at 100 (same); <u>id.</u> at 103 (same). By contrast, in reaching our decision we were required to and did apply Florida law to a case arising in Jacksonville, Florida. <u>See, e.g.</u>, <u>Bravo</u>, 532 F.3d at 1160–61 ("The components and measure of damages in FTCA claims are taken from the law of the state where the tort occurred." (alterations, citation, and quotation marks omitted)); <u>id.</u> at 1161 ("Florida law dictates that . . . ."); <u>id.</u> ("Florida law is also

5

clear that . . . .”); id. at 1164 (“[B]ecause we are bound to decide the issue the way the Florida courts would have . . . .”). The argument we accepted was that under Florida law unappealed damage awards are not considered in deciding the excessiveness of an award. The First Circuit in Limone could not have decided, and did not purport to decide, anything about that or any other issue of Florida law. Nor did we purport to decide anything about Massachusetts law in this case. It follows that the decisions cannot be inconsistent, unless one assumes, as the dissenting opinion apparently does, that the law of every state is, in its words, “the very same” on every issue and in every particular. See Dissent at 1301 (emphasis omitted).

The dissenting opinion suggests that the result in the Limone case, which was the affirmance of an award of nearly $102 million, is inconsistent with the result in this case, which was the reversal of a $20 million part of an award. The results in the two cases are not inconsistent for two reasons. First, as I have already explained, one award was reviewed under Massachusetts law, the other under Florida law. Second, the facts of the two cases are fundamentally different. Unlike this case, Limone was not a medical malpractice case. Unlike this case, Limone did not involve negligent conduct. Instead, it involved intentional conduct of the worst kind. Limone arose from “egregious governmental

6

misconduct," 579 F.3d at 83, involving the "extreme and outrageous," id. at 91, actions of FBI agents in Boston who conspired over a period of years to railroad four innocent "scapegoats" into prison and then engaged in a coverup to keep them there, id. at 86.[2] Three of the four victims of that outrageous misconduct served some of their time on death row "in the grim shadow of death sentences." Id. at 104. Two of the victims died in prison after serving 18 and 28 years. Id. The other two victims served 29 and 33 years before finally being freed. Id. The damages award was to compensate the four victims for the total of 108 years that they were wrongfully imprisoned and for all of the emotional distress that had been deliberately inflicted on them as a result. See id. at 106.

---

[2]The facts in the Limone case grew out of one of the darkest chapters in the history of the FBI, which involved rampant misconduct and corruption in the Boston office spanning a period of at least two decades. See generally David Boeri, The Martyrdom of John Connolly, BOSTON MAG., Sept. 2008, available at http://www.bostonmagazine.com/articles/the_martyrdom_of_john_connolly/ (describing scale of Boston office's involvement with organized crime during 1970s and 1980s); Elizabeth Mehren, Ex-FBI Agent Guilty of Taking Bribes, Tipping Off Mafia, L.A. TIMES, May 29, 2002, at A-3, available at http://www.sfgate.com/cgi-bin/article/article?f=/c/a/2002/05/29/MN221042.DTL (reporting conviction of former FBI agent John Connolly on four counts of corruption stemming from his involvement with organized crime); Shelley Murphy, Death, Deceit, Then Decades of Silence, BOSTON GLOBE, July 27, 2007, available at http://www.boston.com/news/local/massachusetts/articles/2007/07/27/death_deceit_then_decades_of_silence/ (recounting events and personalities surrounding the murder at the center of Limone); Suzanne Smalley & Evan Thomas, A Sequel to 'The Departed': Did a Rogue FBI Agent Instigate a Mob Hit? A Judge Will Soon Decide, NEWSWEEK, Dec. 15, 2008, available at http://www.newsweek.com/id/172571 (detailing prosecution of former FBI agent John Connolly for murder in the second degree).

There is, however, one aspect of the <u>Limone</u> decision that should be mentioned for the sake of completeness.  The $20 million in non-economic damages that the district court gave the plaintiff parents in the present case, and that the panel decided was excessive, was entirely for the parents' loss of consortium with their child.  <u>Bravo</u>, 532 F.3d at 1157–58, 1170 (majority opinion); <u>see also</u> <u>id.</u> at 1172 (Wilson, J., dissenting).  In the <u>Limone</u> case the children of each of the four victims were awarded damages for the loss of consortium with their fathers during the decades the men were wrongfully imprisoned.  The loss of consortium award to each child was only $200,000 (each child also received an additional $50,000 for emotional suffering).  <u>Limone</u>, 579 F.3d at 107.

One of the children cross-appealed in <u>Limone</u>, contending the award was inadequate.  <u>Id.</u> at 107–08.  The First Circuit disagreed and held that the award was big enough.  <u>Id.</u> at 108.  So, <u>Limone</u> stands for the proposition that under Massachusetts law a $200,000 loss of consortium award to the child in that case was sufficient.  <u>See</u> <u>id.</u>  That hardly supports the dissenting opinion's position that under Florida law a $20,000,000 loss of consortium award—one hundred times larger—to the parents in this case is not excessive.

WILSON, Circuit Judge, dissenting from the denial of rehearing en banc.

This is a Federal Tort Claims Act[1] case arising from the negligence of medical personnel at a naval hospital in Jacksonville, Florida which caused severe brain damage to a child who was delivered there. After an 11-day bench trial in the Southern District of Florida, the district judge entered judgment against the United States in the amount of $40,485,788.98, $20,000,000.00 of which constituted non-economic damages awarded to the parents. The parents' part of the award was vacated by the panel and remanded to the district court on the sole ground of it being excessive and shocking to the judicial conscience. *See Bravo v. United States*, 532 F.3d 1154, 1161 (11th Cir. 2008). The majority opinion reasoned that the award did not "bear a reasonable relation to the philosophy and general trend of prior decisions in such cases." *Id*. at 1162 (quoting *Johnson v. United States*, 780 F.2d 902, 907 (11th Cir. 1986)). In determining the philosophy and general trend, the majority opinion compared the damages award to other awards in similar cases. But, in conducting this comparative analysis, the majority opinion confined its comparison solely to Florida published appellate opinions.

I would have affirmed the verdict. Our job was to find "the philosophy and general trend" i.e., to determine whether the verdict "[was] so inordinately large as

---

[1]28 U.S.C. §§ 1346, 2671 *et seq.*

9

obviously to exceed the maximum limit of a reasonable range within which the trier of fact may properly operate." *Johnson*, 780 F.2d at 908. Other Florida jury verdicts demonstrate that the award by the district judge who heard this case after an 11-day bench trial is within the maximum limit of a reasonable range. Those other verdicts would include Florida published appellate decisions that the majority simply disregards. *See, e.g.*, *General Motors Corp. v. McGee*, 837 So. 2d 1010, 1039 (Fla. 4th DCA 2002) (upholding a $60,000,000.00 verdict against General Motors to the parents of a boy who died in a burning car, which included $30,000,000.00 to the parents for their non-economic damages). But my disagreement with the opinion published by the majority extends beyond that determination. In holding that our comparative analysis was confined exclusively to published Florida appellate decisions, I believe that the majority unnecessarily disregarded established precedent, including Florida law, as I explained in a partial dissent. *See Bravo*, 532 F.3d at 1173–79 (Wilson, J., concurring in part and dissenting in part).[2] Florida courts have not limited their review of personal injury awards in the way that the majority does on this appeal. More importantly, the majority opinion represents the first time, as far as I can find, that any federal or

---

[2]*See also Bravo v. United States*, 11th Cir. 2009, 532 F.3d 1154, 1159 (11th Cir. 2009) (Wilson, J., dissenting) (denying panel rehearing).

10

state court has held that in reviewing a personal injury award for excessiveness, the reviewing court is confined to comparing and considering awards reflected only in published appellate decisions in a limited locale.[3]  I believe that by confining its review of compensable awards, the majority was able to disregard similar awards reflected in other published opinions in similar cases in other locales, as well as awards not reflected in published opinions.[4]  I disagree with that methodology, as well as the departure from clear Florida law.  I cannot find that Florida has ever adopted such a rule that would permit a reviewing court to disregard awards reflected in unpublished decisions, out-of-state cases, in-state trial decisions, jury verdicts, etc.  Additionally, the Government in its briefs did not cite a single Florida case to support its contention that the non-economic

---

[3]By "limited locale," I do not mean that the majority confined its review to appellate decisions from the Third District Court of Appeal, but confined its review to the limited locale of Florida.  I argue, however, that there should not be a limited locale to which the court must confine its review in determining excessiveness, and the court should be permitted to look outside of Florida and elsewhere for guidance.

[4]For example, the Bravos cited in their briefs three unappealed cases with higher non-economic damage awards.  *See* Resp't's Br. 54–55 (citing *Navarro v. Austin*, Fla. Cir. Ct. 2006, (No. 02-6154, Oct. 3, 2006) (awarding $9 million for Mr. Navarro's past pain and suffering, $37.5 million for Mr. Navarro's future pain and suffering, and $52.5 million for Mrs. Navarro's loss of her husband's services, comfort, society, and attentions in the past and future); *Korzeniowski v. Eagleman*, Fla. Cir. Ct. 2004, (No. 00-4828 AO, Feb. 26, 2004) (awarding $17 million for the child's past and future pain and suffering, $7 million for the mother's loss of filial consortium, and $7 million for the father's loss of filial consortium); *Hinton v. 2331 Adams St. Corp.*, Fla. Cir. Ct. 2003, (No. 01-012933(12), Jan. 30, 2003) (awarding $35 million for the child's past and future pain and suffering, $5 million for the mother's loss of filial consortium, and $5 million for the father's loss of filial consortium)).

11

damage award should be reversed for excessiveness.  Instead, they cited only two cases: one from the Fifth Circuit and one from the Tenth Circuit.  *See* Pet'r's Reply Br. 19–24 (citing *Lebron v. United States*, 279 F.3d 321, 333 (5th Cir. 2002) and *Miller v. United States*, 901 F.2d 894, 986–97 (10th Cir. 1990)).  Therefore, I would grant en banc rehearing to determine whether we, as a reviewing court, are so limited in our analysis in review of personal injury awards for excessiveness.

On August 27, 2009, the First Circuit, *inter alia*, affirmed a district court's award (after a bench trial) of non-economic damages in an FTCA case in the amount of $101,750,000.00.  *Limone v. United States*, 579 F.3d 79, 106–07 (1st Cir. 2009).  The First Circuit rejected the *very same* argument adopted by the majority in *Bravo*.  In *Limone*, the Government argued that "the district court should have limited its comparability survey of the personal injury verdict to cases arising in Massachusetts . . . ."  *Id.* at 104.  The First Circuit dismissed this argument as "*parochial*" and "incorrect as a matter of law."  *Id.* (emphasis added).  The First Circuit explained its reasoning:

> Although we have said that helpful guidance may be found
> in damage awards from similar cases arising out of the
> same context that are tried in the same locale, that does not
> mean that a court is prohibited from looking for guidance
> elsewhere.  The key is comparability: whether the

12

> counterpart cases involve analogous facts, similar measures
> of damages, and are otherwise fairly congruent.

*Id.* (internal quotation marks and citations omitted). The First Circuit went on to consider jury awards from other jurisdictions, ultimately affirming the award of over $100 million. *See id.* at 106–07 (relying on cases from the Fifth and Seventh Circuits as well as Missouri federal district court). I believe that the First Circuit has the better review.

The majority in *Bravo* created its rule out of whole cloth, limiting review to reported Florida appellate court decisions, based in large part on a passage from our own precedent in *Johnson v. United States*: "[a]lthough excessiveness may be tested by comparing the verdict to those damage awards determined not to be excessive in similar cases, we have been unable to find *any reported case in Florida* with an award this high." 780 F.2d at 908 (emphasis added) (internal citations omitted). Setting aside the fact that the *Johnson* Court did not create any rule but merely noted that it had not located a "reported case in Florida" on point, the *Bravo* majority nevertheless extrapolated a rule from that language in *Johnson*. On the other hand, in *Limone*, the First Circuit declined to interpret the following language as a limitation of its review to Massachusetts cases: comparisons to "*similar* cases arising out of the *same* context that are tried in the *same locale*. . . ."

13

*Limone*, 579 F.3d at 104 (citation omitted) (emphases added).  Despite its own precedent limiting comparison to cases from the "same locale," the First Circuit nevertheless concluded that "that does not mean that a court is prohibited from looking for guidance elsewhere," i.e., outside Massachusetts.  *Id.*  In the instant case, the *Bravo* majority interpreted broader and more ambiguous language in *Johnson* (when compared to that in *Limone*) to mean that we may only look to reported Florida appellate court decisions in this Federal Tort Claims Act case.  Borrowing from the First Circuit, that rule is "incorrect as a matter of law."  *Id.*

The majority opinion in *Bravo* represents a shift in logic in the way we review personal injury awards for excessiveness.  The only avenue available to us to reconsider this precedent, and correct an appeal which I believe to be wrongly decided, is the vehicle provided for en banc review by Federal Rule of Appellate Procedure 35.