[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
————————————————

No. 13-11744
Non-Argument Calendar
————————————————

D.C. Docket No. 9:09-cv-80706-KAM

ANDREW PRETKA,
PAUL LITVAK,
MICHELLE LITVAK,
PETER O'CONNELL,
HARRIET DINARI,
on behalf of themselves and others
similarly situated, et al.

Plaintiffs-Appellants,

versus

KOLTER CITY PLAZA II, INC.,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(December 26, 2013)

Before CARNES, Chief Judge, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

This case is before this Court a second time. The first time we addressed jurisdictional and procedural issues about whether it should be heard in state or federal court. See Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744 (11th Cir. 2010). This time we address the merits. The plaintiffs, all of whom contracted with Kolter City Plaza II, Inc. to buy condominium units, want to rescind those agreements. They first contend that the contracts violated the Florida Condominium Act by omitting a disclosure that the Condominium Act requires and, second, that Kolter breached the contracts by not timely completing construction.

I.

During the span of 2004 and 2005, the plaintiffs separately entered into agreements with Kolter to buy some of the luxury condominium units that it was building in West Palm Beach, Florida. Before that, Kolter had given the plaintiffs "property reports" that estimated, but did not guarantee, a July 2007 completion date. The contracts they signed said much the same: "The Developer agrees that it will use commercially reasonable efforts to complete construction by [July 31, 2007], but actual completion as of this date is not guaranteed." In 2005 and 2006 Hurricane Wilma, permitting issues, and a labor shortage caused delays in the

2

condominium's construction.  Kolter sent written notices to the plaintiffs in September of 2006 stating that the completion date had been pushed back to July 31, 2008.  On August 8, 2008, a little more than one week after the anticipated completion date in the notice, Kolter completed the plaintiffs' units and obtained a conditional certificate of occupancy.  At no point before then had the plaintiffs notified Kolter that it was failing to properly perform under their agreements.[1]

In April 2009, after the housing market slumped, the plaintiffs sued Kolter to rescind their contracts.  In their complaint, they asserted two grounds for rescission, first that Kolter had violated the Florida Condominium Act and, second, that Kolter had breached the contracts.  The claim under the Condominium Act was based on Kolter's failure to include a statutorily-required disclosure on both the front page of the contract and immediately above the buyer's signature, as Fla.

---

[1] The September 2006 notices even included a provision saying that, if the plaintiffs considered the change in date to be material and adverse to them, they could cancel their contracts by notifying Kolter within 15 days.  With the exception of plaintiff Peter O'Connell, none of the plaintiffs contacted Kolter about the new completion date.  O'Connell, for his part, sent a letter purporting to cancel his contract, but that cancellation was conditioned on the occurrence of other events, which, the record indicates, never came to pass.  Instead, after sending his letter, O'Connell continued to perform under his contract and, as a result, affirmed the agreement.  See Hendricks v. Stark, 126 So. 293, 296 (Fla. 1930) ("Where a party, with knowledge of facts entitling him to rescission of a contract or conveyance, afterward, without fraud or duress, ratifies the same, he has no claim to the relief of cancellation.  An express ratification is not required in order thus to defeat his remedy; any acts of recognition of the contract as subsisting or any conduct inconsistent with an intention of avoiding it, have the effect of an election to affirm.").

Stat. § 718.202(3) requires.[2]  The plaintiffs' breach of contract claim stemmed from Kolter's allegedly untimely completion of construction.

Kolter moved to dismiss the plaintiffs' Condominium Act claim for failure to state a claim on which relief could be granted.  The district court denied that motion but found that the plaintiffs had failed to allege any prejudice as a result of Kolter's omission of the disclosure, which the court concluded was required under § 718.202(3) and related Condominium Act case law.  The court gave the plaintiffs an opportunity to amend their complaint to make that allegation.  Kolter moved to dismiss the amended complaint, and the court granted that motion, finding that the plaintiffs had still failed to allege any prejudice.

Discovery proceeded on the breach of contract claim, and then Kolter moved for summary judgment.  The district court granted that motion, determining,

---

[2] Section 718.202(3) provides:

> If the contract for sale of the condominium unit so provides, the developer may withdraw escrow funds in excess of 10 percent of the purchase price from the special account required by subsection (2) when the construction of improvements has begun.  He or she may use the funds in the actual construction and development of the condominium property in which the unit to be sold is located.  However, no part of these funds may be used for salaries, commissions, or expenses of salespersons or for advertising purposes.  A contract which permits use of the advance payments for these purposes shall include the following legend conspicuously printed or stamped in boldfaced type on the first page of the contract and immediately above the place for the signature of the buyer:  ANY PAYMENT IN EXCESS OF 10 PERCENT OF THE PURCHASE PRICE MADE TO DEVELOPER PRIOR TO CLOSING PURSUANT TO THIS CONTRACT MAY BE USED FOR CONSTRUCTION PURPOSES BY THE DEVELOPER.

Fla. Stat. § 718.202(3).

among other things, that the plaintiffs had failed to give Kolter notice of the alleged default and an opportunity to cure, as the contract required. The plaintiffs appeal the district court's judgment on both claims.

## II. The Condominium Act Claim

"We review de novo the district court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." Butler v. Sheriff of Palm Beach Cnty., 685 F.3d 1261, 1265 (11th Cir. 2012) (quotation marks omitted). "To survive a motion to dismiss, the plaintiff must plead a claim to relief that is plausible on its face." Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009). We conclude that a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678, 129 S.Ct. at 1949. But when a complaint permits the court to infer only the mere possibility of misconduct, the plaintiff has failed to state a claim on which relief can be granted. Id. at 679, 129 S.Ct. at 1950.

5

Florida courts have held that Condominium Act provisions similar to § 718.202(3) require plaintiffs to make a plausible showing of prejudice.  In Bruce v. O'Neill, for example, the condominium seller failed to include statutorily-required clauses in the buyer's contract, and the buyer sought to rescind the contract on that ground.  445 So. 2d 379, 380 (Fla. 4th DCA 1984).  The trial court had found that omission to be sufficient to prove a claim for statutory rescission under the Condominium Act, but the appeals court disagreed, noting that "there [was] absolutely no demonstration that the plaintiff/purchaser was even slightly prejudiced by the technical statutory noncompliance of the seller."  Id.  Without a showing of prejudice, the seller's failure to include a statutorily-required clause was not grounds for rescission.[3]  Id.  Based on the Bruce decision, the plaintiffs in this case were required to plead prejudice as well.  See Bravo v. United States, 577 F.3d 1324, 1325 (11th Cir. 2009) (noting that we are "bound by decisions of a

---

[3] An appeals court in Florida's second district reached a similar conclusion about the need to allege prejudice when bringing a claim under the Florida Condominium Act.  In Beach Place Joint Venture v. Beach Place Condo. Ass'n, Inc., a condominium owners association sought to have an office unit owned by the seller converted into a common element owned by the association. 458 So. 2d 439, 440–41 (Fla. 2d DCA 1984).  Though the association had already received the interest it had bargained for and even had notice that the office space belonged to the seller, it asserted ownership over the office unit on the ground that an error in condominium paperwork made ownership of it unclear.  Id. at 441.  The appeals court rejected that claim, noting that even if an error had occurred, the condominium association had shown no prejudice as a result of it.  Id. at 442.  Both parties had instead received the benefits of their bargains.  Id.  Because the seller had made a "good faith attempt to comply with the disclosure requirements of the Condominium Act," the court held that a "technical error" "should not be used to provide a windfall to the [buyers]."  Id. at 441–42.

state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise") (quotation marks omitted).[4]

In the present case, the plaintiffs allege only the possibility that Kolter caused them prejudice by printing the disclosure once. They do not allege that they never saw the disclosure; only that they were "deprived of the benefit of seeing [it] a second, re-emphasized time." Complaint ¶ 56. Had they seen the disclosure twice, their argument goes, the added emphasis "would likely have caused [them] to pay much closer attention to [the disclosure] which possibly could have resulted in a number of eventualities." Complaint ¶ 52 (emphasis added). We will never know which "eventualities" might have come to pass if the plaintiffs had seen the disclosure twice. However, we know the plaintiffs have failed to state a claim by alleging the mere possibility that an act or omission caused prejudice. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557–58, 127 S.Ct. 1955, 1966 (2007) ("[S]omething beyond the mere possibility of loss causation must be alleged . . . .'").

The plaintiffs' remaining allegations of prejudice have no basis in law at all. They allege, for example, that they suffered prejudice because "they were not

---

[4] The plaintiffs have cited federal district court and bankruptcy court opinions for the proposition that prejudice need not be alleged in order for them to state a claim under § 718.202(3). As our decision in Bravo indicates, we are bound by Florida courts' interpretation of Florida law, not the decisions of federal district or bankruptcy courts — especially when those decisions are unpublished, inapposite, or otherwise non-precedential, as was the case with the plaintiffs' cited authorities.

7

made aware by Kolter that the purpose of Florida Statute 718.202 is to protect purchasers under preconstruction condominium contracts from loss of their deposits should the developer fail to perform its contractual obligations." Complaint ¶ 49.  But Florida law places no duty on Kolter to educate the plaintiffs on the purpose of § 718.202 or otherwise act for their benefit.  See Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So. 2d 536, 541 (Fla. 5th DCA 2003) ("In an arms-length transaction, . . . there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered.") (quotation marks omitted); Garcia v. Santa Maria Resort, Inc., 528 F. Supp. 2d 1283, 1296 (S.D. Fla. 2007) ("[A party to a contract] cannot avoid his obligations thereunder by alleging that he did not read the contract, or that the terms were not explained to him, or that he did not understand the provisions.").  The district court correctly concluded that the plaintiffs have failed to state a claim under § 718.202(3) on which relief can be granted.

## III. The Breach of Contract Claim

We review de novo the district court's grant of summary judgment, applying the same standard as the district court.  Burton v. Tampa Hous. Auth., 271 F.3d 1274, 1276 (11th Cir. 2001) (citation omitted).  We view all evidence in the light

8

most favorable to the nonmoving party and draw reasonable factual inferences in their favor.  Id. at 1277.

Here, the plaintiffs contend that Kolter breached its contracts by not timely completing construction of the condominium units.  Those contracts gave no fixed deadline for construction, only an estimate.  And they did not say that time was of the essence.  As a result, Kolter was simply expected to finish construction in a reasonable time.  See Greenwood v. Rotfort, 28 So. 2d 825, 831 (Fla. 1946) ("The general rule . . . is that when a contract does not expressly fix the time for performance of its terms, the law will imply a reasonable time.").

If the plaintiffs thought that Kolter was taking an unreasonably long time to finish construction, paragraph 15 of the contracts required them to notify Kolter and give it a chance to fix the problem.  It is undisputed that the plaintiffs never provided Kolter that type of notice or the opportunity to cure; nor have they offered a valid reason for not doing so.  For those reasons, Kolter cannot be held liable for allegedly taking an unreasonably long time to finish construction.  See, e.g., Caronte Enterprises, Inc. v. Berlin, 668 So. 2d 233, 234 (Fla. 3d DCA 1996) (holding that a seller did not breach a contract for the sale of real property by failing to timely repair the property when the contract had set no timeframe for the repairs, the buyers had not demanded completion of the repairs by a certain date, and time was not stated to be of the essence); Saunders Leasing Sys., Inc. v. Gulf

9

Cent. Distribution Ctr., Inc., 513 So. 2d 1303, 1307 (Fla. 2d DCA 1987) (holding that a defendant was not liable for failure to perform when, despite a contractual requirement to do so, the plaintiff gave neither a notice of default nor an opportunity to cure).  As a result, the district court properly granted summary judgment in favor of Kolter on the plaintiffs' claim for breach of contract.

**AFFIRMED.**