[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12049

Non-Argument Calendar

_____

LINDA FELDER,

Plaintiff-Appellant,

*versus*

SAM'S EAST, INC.,
d.b.a. SAM'S CLUB # 6341,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cv-60962-BB

_____

Before ROSENBAUM, GRANT, and ED CARNES, Circuit Judges.

PER CURIAM:

After Linda Felder slipped on water inside a Sam's store, she filed a lawsuit in Florida state court against Sam's East, Inc. (d/b/a Sam's Club #6341), alleging negligence. Sam's Club removed the case to federal court based on diversity jurisdiction and moved for summary judgment, which the district court granted. Felder appeals. Because our best interpretation of Florida law is that there is a genuine dispute of material fact as to Sam's Club's constructive notice that water was on the floor, we reverse that grant of summary judgment.

### I. Background Facts and Procedural History

On June 15, 2021, Felder was shopping in the coffee aisle of the Sam's Club Supermarket in Broward County, Florida. Then, in her words: "I start sliding. Next thing I know, I was on the floor." She found herself lying on her back and realized she had hit her head on the concrete floor. Looking up, she saw people gathered around her and heard them referring to "water." Paramedics arrived and took her to the hospital.

Not until the paramedics had placed her on the stretcher did Felder see the "puddle" of water on which she had slipped. There is no direct evidence of how the water got on the floor or how long it had been there. Felder was unable to describe its color or say if anyone had walked through it or pushed a cart through it.

23-12049                Opinion of the Court                3

Four Sam's Club employees arrived on the scene of the slip. Three of them testified in this case and described the water that had felled Felder.  Club manager John Irving Padget saw "droplets" and "a small pool of water."  Associate Antolin Jenkins saw "specs of water" he considered "fresh."  Associate Adie George Frances described the mess as "only water drippings."  None of them saw footprints, dirt, skid marks, or cart marks.

Another customer used Felder's phone to take photographs of her lying on the ground after she slipped.  Four of those photographs are in evidence, and their authenticity is not challenged (though the photographer is unknown).  Here's a representative example:



No one was sure how much time had passed since a Sam's Club employee had last inspected the coffee aisle. Associate Frances explained that the store was divided into about seven "areas" or "zones" (which varied in size but might contain, for example, four or five aisles), and the store "always ha[d] two persons [i]n each area." Manager Padget testified that Sam's Club "want[ed] to inspect each area of the store hourly" and that inspection sweeps were "supposed to be an hourly thing." But there's no documentation logging when the sweeps occur, and no documentation about "who was the last person in that [coffee] aisle" before Felder's fall.

After the accident, Padget did not ask any of the employees under his supervision if they had been in that aisle recently. He said that associate Jenkins was one of the employees "zoning in that area." But Jenkins did not remember if he had been in the coffee aisle within the last three hours. Immediately before the fall, he had been working in the soup aisle for (he thought) fifteen minutes, and before that he had been doing online work. There is no evidence about any second person assigned to that zone.

When it granted summary judgment in favor of Sam's Club, the district court relied on the photographs and testimony from the Sam's Club employees to find that "no reasonable juror could infer . . . any evidence of footprints, prior track marks, or changes in consistency of the water in order to find that Defendant was on constructive notice because the dangerous condition had existed for a sufficiently long time." It also rejected Felder's theories that

Sam's Club had constructive notice because spills were so regular as to be foreseeable and that Sam's Club should be sanctioned for failing to preserve evidence because employees cleaned up the spill before photographing it.

## II. Discussion

We review *de novo* a district court's grant of summary judgment. *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1168 (11th Cir. 2023). We draw all inferences in the light most favorable to the non-moving party and recognize that summary judgment is appropriate only if there are no genuine issues of material fact. *Id.*

Because our jurisdiction depends on diversity of citizenship, *see* 28 U.S.C. § 1332, we apply the substantive law of the forum state, Florida, *see Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Sutton*, 64 F.4th at 1168. "[F]ederal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise." *Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009) (quotation marks omitted).

Under Florida statutory law, "if a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1). One way to prove constructive knowledge is by presenting "circumstantial evidence" showing that "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business

establishment should have known of the condition." *Id.* § 768.0755(1)(a). That is how Felder means to carry her burden, and the issue before us is whether she has marshalled sufficient evidence of constructive notice to survive summary judgment.[1] Lacking Florida Supreme Court precedent on point, we look to the decisions of Florida's district courts of appeals. *Bravo*, 577 F.3d at 1325–26.

Under those decisions, "the mere presence of water on the floor is not enough to establish constructive notice." *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090, 1088 (Fla. 3d DCA 2011) (affirming the grant of summary judgment to the defendant where the plaintiff testified that the water on which she slipped was "clear"). Instead, as this Court has explained, "Florida's appellate courts have found constructive notice when the offending liquid was dirty, scuffed, or had grocery-cart track marks running through it, or if there was other evidence such as footprints, prior track marks, changes in consistency, or drying of the liquid." *Sutton*, 64 F.4th at 1170 (alterations adopted) (quotation marks omitted); *see also id.* at 1167 (reversing the grant of summary judgment to the defendant store where the plaintiff slipped on "a squished grape, accompanied by juice, a track mark, and footprints").

---

[1] To win a slip-and-fall negligence case, a plaintiff must also establish (1) duty, (2) breach, (3) causation, and (4) harm. *See Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007); *Sutton*, 64 F.4th at 1169.

Our best interpretation of Florida law is that there is a genuine issue of material fact as to whether Sam's Club had constructive notice of the water on which Felder slipped. That conclusion is based on two pieces of evidence: photographs which a reasonable jury could interpret as showing that the water was dirty and partially dried, and testimony allowing the inference that Sam's Club had not inspected the site of the slip for an hour or more before the fall.

A reasonable jury could view the photographs of the water as evidence that it had partially dried. Sam's Club observes that the reflection of light in the water indicates that it was still wet, but that's not true of all the water in the photographs. Some droplets appear to have dried. Several courts interpreting Florida law have decided that drying indicates a substance has been there long enough that the store should have noticed it. *See, e.g., Sutton*, 64 F.4th at 1170; *Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1278–79 (Fla. 5th DCA 2023); *Norman v. DCI Biologicals Dunedin, LLC*, 301 So. 3d 425, 430 (Fla. 2d DCA 2020).

Not only that but a jury could find that the water was dirty. By itself, that detail isn't enough to establish constructive notice. *See Welch*, 357 So. 3d at 1279. But along with the other evidence, it contributes to showing a genuine issue of material fact about Sam's Club's constructive knowledge of the spill. *See, e.g., Mashni v. Lasalle Partners Mgmt. Ltd.*, 842 So. 2d 1035, 1036–38 (Fla. 4th DCA 2003) (reversing the grant of summary judgment to the defendant where the plaintiff slipped in "a puddle of water" and testified that

the water was "dirty" and that "some of the dirt stuck to his hand").[2]

The testimony about the passage of time between aisle inspections inside Sam's Club also contributes to a showing of constructive knowledge. As the district court noted and Sam's Club now emphasizes, "the fact there was no inspection for a given length of time *in itself* provides no proof that the defect was actually there for a sufficient period to place a landowner on reasonable notice of its existence." *Wal-Mart Stores, Inc. v. King*, 592 So. 2d 705, 707 (Fla. 5th DCA 1991) (emphasis added).

But Florida appellate courts regularly rely on the length of time between inspections (alongside evidence of a spill's physical properties) to conclude that a plaintiff has created a genuine issue of material fact about whether the defendant had constructive knowledge of a floor's hazardous condition.[3] "[T]he time between

---

[2] Sam's Club responds to the photographic evidence by denying that it could be interpreted to show the water was dirty and dry and by insisting that it fails to support constructive notice without corroborating testimony about the water's state. But Florida law does not require *testimony* to establish the physical features of the water; it requires *evidence*. *See Sutton*, 64 F.4th at 1170. The photographs are evidence. And a jury can determine what the photographs show.

[3] *See Norman*, 301 So. 3d at 431, 428–30 (reversing the grant of summary judgment to the defendant based on both (1) "a cup's worth of soiled water" alongside footprints and slide marks and (2) the fact that "none of the [defendant's] employees, including the receptionist, recalled inspecting the men's donor bathroom on the day of the incident"); *Gerard v. Eckerd Corp.*, 895 So. 2d 436, 436–38 (Fla. 4th DCA 2005) (reversing the grant of summary

inspections necessary to give rise to an inference that the danger-ous condition existed sufficiently long enough that it would have been discovered in the exercise of reasonable care must be gov-erned by a reasonableness standard, giving due consideration to the size, nature, and inherent risks of the area in question." *McCarthy v. Broward Coll.*, 164 So. 3d 78, 81 (Fla. 4th DCA 2015). This Court — surveying caselaw in which there was evidence of the length of time between employee inspections and later accidents – has ob-served that "Florida's courts have found at least fifteen to twenty minutes to be sufficient for defendants to be charged with knowledge of the condition and a reasonable time in which to

---

judgment to the defendant where the manager had confirmed the aisle was clean "approximately ten minutes prior to the accident," explaining that "there [we]re issues of fact as to whether the inspection, and inspection policy, were reasonable" because "there [was] no evidence that written and reasonably fre-quent inspection procedures were in place or followed"); *Brooks v. Phillip Watts Enterprises, Inc.*, 560 So. 2d 339, 342 (Fla. 1st DCA 1990) (reversing the grant of summary judgment to the defendant where the plaintiff slipped on rainwater near the entrance and there was evidence that "the area had not been in-spected" for "some thirty minutes to an hour before appellant's fall"); *see also Teate v. Winn Dixie Stores, Inc.*, 524 So.2d 1060, 1060–61 (Fla. 3d DCA 1988) (reversing the grant of the defendant's motion for directed verdict where there was testimony that (1) "no employee had cleaned the area for fifteen to twenty minutes before the fall" and (2) "there was some water on the floor around the peas" (possibly reflecting that the peas had "thawed")); *Winn Dixie Stores, Inc. v. Williams*, 264 So. 2d 862, 863–64 (Fla. 3d DCA 1972) (upholding a jury verdict for the plaintiff in a slip-and-fall negligence case based on (1) testimony that the substance on which the plaintiff fell was "sticky, dusty and dirty"; and (2) testimony that the store manager "made periodic inspections" of the store and had last visited the aisle where the plaintiff fell "fifteen to twenty minutes before the accident occurred").

correct it," while "[o]ther decisions in Florida have determined that thirteen minutes or less is not enough time." *Sutton*, 64 F.4th at 1169 (alterations adopted) (quotation marks omitted).

Here, the store manager said inspections were performed hourly (at least, they were "supposed" to be, and that's what he "wanted"). The only known employee assigned to the zone where the fall occurred was not sure when he had last inspected the aisle, or even if he had done so within the last three hours. Alongside the photos, those facts could support a jury finding that the water was on the floor long enough that Sam's Club reasonably should have discovered and remedied it. *See, e.g.*, *Brooks*, 560 So. 2d at 342 ("some thirty minutes to an hour" between inspection and fall); *Teate*, 524 So.2d at 1060–61 ("fifteen to twenty minutes"); *Williams*, 264 So. 2d at 863–64 ("fifteen to twenty minutes").

### III. Conclusion

There is a genuine issue of material fact as to whether the water on which Felder slipped "existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition" and "should have taken action to remedy it." Fla. Stat. § 768.0755(1)(a).[4] Of course "when

---

[4] Having reached that conclusion based on the photographic evidence and testimony about the length of time between inspections, we do not reach and express no view on Felder's theories that summary judgment was improperly awarded to Sam's Club because (1) "[t]he condition occurred with regularity and was therefore foreseeable," Fla. Stat. § 768.0755(1)(b); and (2) Sam's

we write to a state law issue, we write in faint and disappearing ink, and once the state supreme court speaks the effect of anything we have written vanishes like the proverbial bat in daylight, only faster." *LeFrere v. Quezada*, 582 F.3d 1260, 1262 (11th Cir. 2009) (quotation marks omitted). Still, based on the decisions of Florida's appellate courts, *see Bravo*, 577 F.3d at 1325–26, we reverse the grant of summary judgment to Sam's Club and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

Club should have been sanctioned for spoliating evidence (i.e., cleaning up the spill before photographing it).