# Third District Court of Appeal

## State of Florida

Opinion filed May 06, 2015.
Not final until disposition of timely filed motion for rehearing.

————————

Nos. 3D14-1339 & 3D14-823
Lower Tribunal No. 10-62733

————————

**Philip Morris USA, Inc.,**
Appellant/Cross-Appellee,

vs.

**Antonio Cuculino,**
Appellee/Cross-Appellant.

Appeals from the Circuit Court for Miami-Dade County, Jorge E. Cueto, Judge.

Boies, Schiller & Flexner LLP, and Stephen N. Zack and Andrew S. Brenner; Shook, Hardy & Bacon LLP, and J. Daniel Gardner; Arnold & Porter LLP, and Geoffrey J. Michael (Washington, DC), for appellant/cross-appellee.

The Ferraro Law Firm, P.A., and James L. Ferraro and David A. Jagolinzer, for appellee/cross-appellant.

Before WELLS, ROTHENBERG, and EMAS, JJ.

ROTHENBERG, J.

Philip Morris USA, Inc. ("Philip Morris") appeals a final judgment entered after a jury verdict in favor of the plaintiff below, Antonio Cuculino ("Mr. Cuculino"), and from the denial of several post-trial motions. Mr. Cuculino cross-appeals the trial court's order granting Philip Morris's motion for partial summary judgment, thereby precluding Mr. Cuculino from seeking punitive damages as to his non-intentional tort claims of negligence and strict liability, and the order denying his motion for attorney's fees filed pursuant to section 768.79, Florida Statutes, and Florida Rule of Civil Procedure 1.442. Finding no reversible error, we affirm.

Mr. Cuculino filed an Engle-progeny[1] action against Philip Morris and R.J. Reynolds Tobacco Company ("R.J. Reynolds"), alleging that Mr. Cuculino's coronary heart disease resulted from smoking cigarettes manufactured by Philip Morris and R.J. Reynolds. The complaint asserted causes of action for fraudulent concealment, conspiracy to fraudulently conceal, negligence, and strict liability. Prior to the commencement of trial, the trial court granted Philip Morris's and R.J. Reynolds's motion for partial summary judgment, thereby precluding Mr. Cuculino from seeking punitive damages on his non-intentional tort claims of negligence and strict liability.

---

[1] Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006).

2

Following a two-week trial, the jury returned a verdict fully exonerating R.J. Reynolds, but finding against Philip Morris on Mr. Cuculino's negligence and strict liability claims. The jury awarded Mr. Cuculino $12.5 million in damages, but attributed 40% of the fault to Philip Morris and 60% of the fault to Mr. Cuculino. The jury, however, returned a verdict in favor of Philip Morris as to Mr. Cuculino's claims for fraudulent concealment and conspiracy to fraudulently conceal. Because the trial court had previously ruled that Mr. Cuculino could not seek punitive damages on his negligence and strict liability claims, and because the jury found against Mr. Cuculino on his claims for fraudulent concealment and conspiracy to fraudulently conceal, the jury did not consider punitive damages.

Following the jury's verdict, Philip Morris filed several post-trial motions, including a motion for new trial, asserting that Mr. Cuculino's counsel made improper and prejudicial comments during closing arguments. The trial court denied Philip Morris's post-trial motions and thereafter entered final judgment in favor of Mr. Cuculino and against Philip Morris in the amount of $5 million. These appeals followed.

Philip Morris contends the trial court abused its discretion by denying its motion for new trial where Mr. Cuculino's counsel made improper and prejudicial comments during closing argument. Although we agree that the comments were improper, we nonetheless find no reversible error as the comments were not so

3

highly prejudicial and inflammatory that Philip Morris was denied its right to a fair trial.

During oral argument, Mr. Cuculino's appellate counsel properly and commendably acknowledged that the complained-of comments were improper. During closing argument, Mr. Cuculino's counsel explained to the jury that people get paid for the time they work, including actors, who make "astronomical sums," professional athletes, who make "tremendous sums," and expert witnesses, who make $750 per hour. Defense counsel objected, and the trial court sustained the objection. Thereafter, Mr. Cuculino's counsel stated that Philip Morris and R.J. Reynolds gave Mr. Cuculino the "job" of "suffer[ing] from progressive heart disease," and he deserves to get paid for this "job." Mr. Cuculino's counsel then stated: "You know, what is it that's going to be a just and appropriate figure? Who in their right mind would want to trade places with Mr. Cuculino and take this job." Defense counsel objected, and the trial court sustained the objection. Immediately thereafter, Mr. Cuculino's counsel continued this line of argument by stating: "Would someone do it for a million dollars an hour? Probably not. Would someone do it for anything? Probably not." Defense counsel objected and moved for a mistrial. The trial court sustained defense counsel's objection and instructed the jury as follows: "Only the jury gets to choose or determine what is fair and adequate compensation. Does everybody understand that?" The jury

4

answered in the affirmative. The trial court, however, did not instruct the jury to disregard these comments, and neither Philip Morris nor R.J. Reynolds requested such an instruction.

Whether through overzealousness or otherwise, Mr. Cuculino's counsel made comments during closing argument that we do not condone, and trial counsel would be well-advised not to utilize such arguments in future closing arguments. Nonetheless, despite Mr. Cuculino's appellate counsel's acknowledgement at oral argument that the comments were improper, he vigorously argued that the trial court did not abuse its discretion by denying Philip Morris's post-trial motion for new trial because the comments were not so highly prejudicial and inflammatory that Philip Morris was denied its right to a fair trial. See Engle v. Liggett Grp., Inc., 945 So. 2d 1246, 1271 (Fla. 2006) ("A trial court's order granting or denying a motion for new trial based on either objected-to or unobjected-to improper argument is reviewed for an abuse of discretion."). We agree.

"If the issue of an opponent's improper argument has been properly preserved by objection and motion for mistrial, the trial court should grant a new trial if the argument was 'so highly prejudicial and inflammatory that it denied the opposing party its right to a fair trial.'" Id. (quoting Tanner v. Beck, 907 So. 2d 1190, 1196 (Fla. 3d DCA 2005)). In arguing that the comments were "so highly prejudicial and inflammatory" that it was denied a fair trial, Philip Morris asserts

that the jury's $12.5 million verdict is "grossly excessive" and has "no logical nexus to the evidence presented." In support, Philip Morris emphasizes that the jury's $12.5 million verdict is $2.5 million more than the maximum requested by Mr. Cuculino's counsel during closing argument. Philip Morris's assertion, however, is not entirely accurate. Despite asking the jury to award $10 million, Mr. Cuculino's counsel clarified in his closing argument that the $10 million figure did not include future damages and that the jury could award more or less than the $10 million figure:

> You might go lower, you might want to go higher. But what I'm saying is, confine yourselves to the period of time that Mr. Cuculino was ill with heart disease from 1994 up until the time in 2009 that he quit. It's up to you. You might decide, no, he's entitled to future damages.

Nonetheless, even if Mr. Cuculino's counsel would have asked the jury to award no more than $10 million, "a jury may properly award damages equal to or in excess of those requested by counsel in closing argument." Rudy's Glass Constr. Co. v. Robins, 427 So. 2d 1051, 1053 (Fla. 3d DCA 1983). Further, "[t]he magnitude of a damage award, without more, is no indication that the jury was motivated by improper consideration in arriving at the award." Id.

Contrary to Philip Morris's assertion, the verdict reflects that the jury was not inflamed or highly prejudiced by the improper comments because the jury did not completely find in favor of Mr. Cuculino. First, the jury entered a verdict fully

6

exonerating defendant R.J. Reynolds. Second, the jury found in favor of Philip Morris on Mr. Cuculino's intentional tort claims, thereby precluding the jury from reaching the issue of punitive damages, which is often substantially more than compensatory damages in Engle-progeny cases. Finally, the jury found that Mr. Cuculino was 60% at fault, thereby substantially reducing the $12.5 million verdict to an award of only $5 million.

Furthermore, based on the record before this Court, we cannot say that there is no nexus between the jury's award and the evidence presented. Specifically, the record demonstrates that Mr. Cuculino (1) suffered a heart attack in 1994 at the age of forty-nine; (2) underwent an angioplasty in 1995; (3) suffered a serious incident in 1999 that required him to be airlifted from Key West to Mount Sinai Medical Center in Miami where he underwent a quadruple bypass surgery; (4) became very depressed after the quadruple bypass and, as a result, was placed on anti-depressant medication; (5) underwent a procedure in 2013 where three stents were placed into two different arteries; (6) suffers from atherosclerosis; (7) has had approximately twenty catheterization procedures; (8) requires ongoing aggressive intervention and medical therapy, including taking twelve pills per day for his heart; (9) suffers from shortness of breath and tightness in the chest after walking half a block; (10) has restricted his activities due to his fear that he will suffer another heart attack despite his physician's advice to return to a normal level of activity and to exercise

regularly; and (11) sold his boat because he fears suffering a heart attack at sea. In addition, Mr. Cuculino's expert witness testified that Mr. Cuculino is at risk for a subsequent coronary event which could cause death. In summary, although we disapprove of these few comments made by Mr. Cuculino's counsel during his 105-minute closing argument, the jury's verdict reflects that the comments were not so highly prejudicial and inflammatory that Philip Morris was denied its right to a fair trial.

Lastly, on cross-appeal, Mr. Cuculino contends the trial court erred by precluding him from seeking punitive damages for his negligence and strict liability claims and by denying his motion for attorney's fees based on his offer of judgment and the jury's verdict. Based on this Court's recent decision in R.J. Reynolds Tobacco Co. v. Williams, 39 Fla. L. Weekly D1863 (Fla. 3d DCA Sept. 3, 2014), which adopted the First District Court of Appeal's decision in Soffer v. R.J. Reynolds Tobacco Co., 106 So. 3d 456 (Fla. 1st DCA 2012), review granted, 139 So. 3d 887 (Fla. 2014), the trial court correctly ruled on Philip Morris's motion for partial summary judgment precluding Mr. Cuculino from seeking punitive damages on his negligence and strict liability claims. And, as to the attorney's fees issue, Mr. Cuculino's counsel properly and commendably conceded at oral argument that Mr. Cuculino is not entitled to his attorney's fees because his proposal for settlement did not strictly comply with the requirements set forth in

section 768.79 and rule 1.442 based on binding case law interpreting the offer of judgment statute.

The remaining issues raised by Philip Morris do not merit discussion. Accordingly, we affirm the final judgment entered in favor of Mr. Cuculino and against Philip Morris and the orders denying Philip Morris's post-trial motions; the order granting Philip Morris's motion for partial summary judgment precluding Mr. Cuculino from seeking punitive damages on his non-intentional tort claims; and the order denying Mr. Cuculino's motion for attorney's fees.

Affirmed.