# Third District Court of Appeal

## State of Florida

Opinion filed October 18, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-675
Lower Tribunal No. 07-43991
_____

## Philip Morris USA, Inc. and R.J. Reynolds Tobacco Company,
Appellants,

vs.

## Roland Ledoux, as Personal Representative of the Estate of Patricia Mary Ledoux,
Appellee.



An Appeal from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

Arnold & Porter Kaye Scholer, Daphne O'Connor and Geoffrey J. Michael (Washington, DC); Shook, Hardy & Bacon and Frank Cruz-Alvarez; King & Spalding, William L. Durham, II, and Val Leppert (Atlanta, GA), for appellants.

Gordon & Doner, Robert E. Gordon and Gary M. Paige (Davie); Trop Law Group and Adam Trop (Tamarac); David J. Sales and Daniel R. Hoffman (Jupiter), for appellee.

Before ROTHENBERG, C.J., and EMAS and FERNANDEZ, JJ.

EMAS, J.

The defendants below, Philip Morris USA, Inc. ("PM") and R.J. Reynolds Tobacco Company ("RJR") (together, "Defendants"), appeal from a final judgment following a jury trial and a verdict in favor of the plaintiff below, Roland Ledoux ("Roland"), as the personal representative of the estate of Patricia Mary Ledoux ("Plaintiff" or "Patricia"). We affirm.

**FACTS**

Plaintiff brought an Engle[1]-progeny claim against Defendants, alleging that Patricia died from lung cancer caused by an addiction to smoking cigarettes manufactured and marketed by Defendants. Plaintiff alleged causes of action for strict liability, fraud by concealment, conspiracy to commit fraud, and negligence.

The case proceeded in two phases: In Phase I, the jury determined: 1) whether Patricia was addicted to cigarettes containing nicotine; if so, 2) whether her addiction was the legal cause of her lung cancer and death; if so, 3) the amount of compensatory damages; and 4) whether punitive damages were warranted

---

[1] Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006) began as a smokers' class action lawsuit filed in 1994 against cigarette companies and tobacco industry organizations seeking damages for smoking-related illnesses and deaths. The class included all Florida "citizens and residents, and their survivors, who have suffered, presently suffer or who have died from diseases and medical conditions caused by their addiction to cigarettes that contain nicotine." Id. at 1256. In Engle, the Florida Supreme Court decertified the class, but held that certain jury findings from the class action would have res judicata effect in any subsequent lawsuits by individual class members seeking damages from the defendants. Philip Morris USA Inc. and R.J. Reynolds Tobacco Company were defendants in Engle.

2

against Defendants. In Phase II, the jury determined the amount of punitive damages.

Prior to trial, Defendants filed several motions in limine, two of which are relevant to this appeal. First, Defendants moved to exclude "testimony, other evidence, or argument concerning . . . the number of deaths purportedly caused by cigarettes." The trial court denied this motion. Second, Defendants moved to prohibit several categories of improper arguments. The trial court granted this motion.

### 1. Deaths Caused by Smoking

### a. Opening Statement

During the Phase I opening statement, Plaintiff's counsel told the jury, over Defendants' objection, that in 2014, there were "500,000 deaths per year from smoking just from lung cancer in that one year in the United States" and that there had been "20 million deaths since 1964 from smoking," repeating the number "20 million." Plaintiff's counsel also stated over Defendants' objection that "50 percent of all regular smokers are going to die from smoking those cigarettes." In addition, Plaintiff's counsel told the jury, again over Defendants' objection, that "to this day, smoking is the number one cause of preventable death in the United States . . . [s]moking kills more people than alcohol, cocaine, heroin, homicide, suicide, motor vehicle crashes and fires combined."

### b. Plaintiff's Expert

At trial, Plaintiff's expert historian, Dr. Robert Proctor, testified as to the number of deaths caused by smoking. Specifically, Dr. Proctor testified as to the following:

> [Dr. Proctor]: Well, in the United States, it is over 500,000 Americans die every year from cigarettes.
>
> [Defendants' counsel]: Objection, State Farm.[2]
>
> [The trial court]: Overruled.
>
> . . .
>
> [Plaintiff's counsel]: By the way, how many people since 1964 have died from lung cancer?
>
> [Doctor Proctor]: Of lung cancer –
>
> [Plaintiff's counsel]: I mean from smoking.
>
> [Doctor Proctor]: From smoking – from cigarettes altogether, it is over 20 million.
>
> [Plaintiff's counsel]: Okay.
>
> [Defendant's counsel]: Objection, Williams[3]/State Farm.
>
> [The trial court]: Overruled.
>
> . . .
>
> [Plaintiff's counsel]: Well, between 1950 and presently, how many people have died from smoking in America?

---

[2] This is an apparent reference to the decision in State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003).

[3] This is an apparent reference to the decision in Philip Morris USA v. Williams, 594 U.S. 346 (Fla. 2007). See discussion *infra* at *7-8.

[Defendants' counsel]: Objection, Your Honor, Williams/State Farm.

[The trial court]: Overruled.

[Doctor Proctor]: Over 20 million Americans, closer to 25 million.

## 2. Closing Argument

During Plaintiff's Phase I closing argument, Plaintiff's counsel made several arguments that Defendants characterize as improper and in violation of the trial court's in limine ruling prohibiting certain types of arguments. In particular, Defendants contend that Plaintiff's counsel engaged in the following improper arguments:

Comment Number One:

[Plaintiff's counsel]: But I can tell you this, if in 1996 someone had put an ad in the paper that Roland Ledoux had read – he reads the paper every day – and the ad was, we will pay you $10 million, and all you have to do is you have to sit there and you have to watch your wife, the love of your life, choke and struggle and die in front of you –

Defense counsel objected, stating "there's no evidence of this, Your Honor."

The objection was overruled.

Comment Number Two:

Immediately thereafter, Plaintiff's counsel told the jury:

Then you have to bury her and you have to live alone for the next 19 years and the rest of your life, I submit to you that Roland Ledoux would have said, thank you, but keep the money.

This comment drew an objection which was sustained by the trial court.

The trial court, however, denied Defendants' motion for mistrial.

Comment Number Three:

In the final complained-of argument, Plaintiff's counsel said:

If there was a way that Roland Ledoux could wave a magic wand and bring his wife back in and she would walk in the door, he would walk right out that courtroom and right there, take her hand and say, come on, honey, let's go home. He was not given that option. He is here because of what the Defendants did. And he's going to ask you to hold them accountable.

Defendants did not interpose an objection to this argument, but it was raised in their posttrial motion for new trial.

## 3. The Verdicts

At the conclusion of Phase I, the jury found that Patricia was addicted to smoking cigarettes containing nicotine manufactured by Defendants and as a result she died from lung cancer. The jury found for Plaintiff, allocating 47% of the comparative fault to each Defendant and 6% to Patricia. The jury awarded Plaintiff $10 million in compensatory damages for his pain and suffering. The jury also found for Plaintiff on the intentional torts of concealment and conspiracy to conceal. In addition, the jury found by clear and convincing evidence that Defendants' conduct warranted punitive damages. In Phase II, the jury awarded $12.5 million in punitive damages against each Defendant. The trial court entered final judgment in favor of Plaintiff holding Defendants jointly and severally liable for the $10 million in compensatory damages and each Defendant liable for $12.5 million in punitive damages.

6

## 4. Post-trial Motions

Defendants filed several post-trial motions. Defendants moved for a new trial or, in the alternative, remittitur, arguing that the damage awards were excessive. Defendants also requested to reduce the compensatory damages award by the percentage of comparative fault attributed by the verdict to Patricia. Defendants moved the trial court to apply a credit against the jury's award of punitive damages based on the amounts paid by PM USA and RJR's predecessor-in-interest, Lorillard Tobacco Company ("Lorillard"), as part of the Guaranteed Sum Stipulation–a stipulation entered into in the original Engle litigation. Finally, Defendants moved for a new trial on the basis of improper arguments. The trial court denied each of these motions.

## ANALYSIS

## 1. Deaths Caused by Smoking

Defendants argue that the trial court erred in allowing Plaintiff to introduce evidence and present argument regarding the number of deaths caused by smoking. Defendants contend this evidence was irrelevant and unduly prejudicial, requiring a new trial. Our standard of review on a trial court's evidentiary rulings is abuse of discretion. Salazar v. State, 991 So. 2d 364, 373 (Fla. 2008). We conclude that the trial court did not abuse its discretion in permitting Plaintiff to introduce evidence and present argument regarding the number of deaths caused by smoking as it was

7

relevant to the issue of entitlement to punitive damages (an issue determined by the jury during Phase I of the trial), and bears upon the question of "reprehensibility."

Further, the trial court properly guided and limited the jury's consideration of this evidence by giving the following instruction:

> In determining whether punitive damages are warranted, you may not punish a Defendant for any harm suffered by any individuals others than Mr. Ledoux or Mrs. Ledoux. You may consider harms suffered by other persons not parties to this lawsuit in deciding whether to punish a Defendant for the reprehensibility or wrongness of its conduct.

See Philip Morris USA v. Williams, 549 U.S. 346, 355 (2007) (agreeing that harm to others is relevant to the issue of reprehensibility but that "[g]iven the risks of unfairness, it is constitutionally important for a court to provide assurance that a jury is asking the right question;" that is, "seeking, not simply to determine reprehensibility, but also to punish for harm caused [to] strangers").

## 2. Closing Arguments

Defendants assert that three arguments made by Plaintiff's counsel during closing argument, described above, were improper and therefore require a new trial. On appeal, Defendants assert that these arguments were a violation of the Golden Rule. A Golden Rule argument asks the jurors "to place themselves in the plaintiffs' position and urge[s] them to award an amount of money they would desire if they had been the victims." Coral Gables Hosp., Inc. v. Zabala, 520 So. 2d 653, 653 (Fla. 3d DCA 1988). "[A] golden rule argument . . . is impermissible

8

because it encourages the jurors to decide the case on the basis of personal interest and bias rather than on the evidence." Metro. Dade Cty. v. Zapata, 601 So. 2d 239, 241 (Fla. 3d DCA 1992). "Such arguments constitute reversible error, if a contemporaneous objection is made, because they strike at the very heart of our justice system." SDG Dadeland Assocs., Inc. v. Anthony, 979 So. 2d 997, 1003 (Fla. 3d DCA 2008). "Even when an attorney does not explicitly ask the jurors how much money they would wish to receive in the plaintiff's position, comments may violate the Golden Rule if they implicitly suggest that the jury place itself in the plaintiff's position." Id.

We are dubious of Plaintiff's characterization of these comments as Golden Rule arguments. Defendants contend that this characterization is supported by the First District's decision in Bocher v. Glass, 874 So. 2d 701 (Fla. 1st DCA 2004). In Bocher, plaintiffs' counsel told the jury during closing argument that if a "magic button" were placed in front of Mrs. Williams (naming one of the jurors) and $6 million were placed in front Mr. Brooks (naming another juror), the plaintiffs would walk past the money and press the button to bring their son back. The First District found this improper, observing:

> Although we recognize that the "magic button" argument did not explicitly ask the jurors how much they would want to receive had their own child died in an accident, we find it was nonetheless improper. The only conceivable purpose behind counsel's argument was to suggest that jurors imagine themselves in the place of Jeffrey's parents. Counsel utilized jurors' actual names, and even set up the

9

jury box as a prop for the "magic button" and the $6 million. "Golden rule" arguments are improper because they depend upon inflaming the passions of the jury and inducing fear and self-interest. See Tremblay v. Santa Rosa County, 688 So.2d 985, 987 (Fla. 1st DCA 1997). The "magic button" argument had the same effect. If jurors are to remain fair decision-makers, the trial court must guard against a deliberate act of counsel that serves to put the jury center stage in the drama that should be the trial.

As the above excerpt demonstrates, the circumstances attendant to that argument—including the staging and use of the jury box as a prop, and utilizing individually-named jurors to play roles in a scene created by counsel, more closely approximate a Golden Rule argument, and distinguish Bocher from the instant case.

This does not end the analysis because, whether or not these arguments constituted a Golden Rule violation, we find that they nevertheless were ill-conceived and improper. Although it is evident that Plaintiff's counsel was attempting to illustrate the practical limitations of our civil justice system by arguing to the jury that no monetary award—regardless of the amount—would suffice to give Roland what he truly wanted, the argument was presented in an overly-dramatic manner such that it could evoke the jury's sympathy. We have expressed in prior opinions the impropriety of similar arguments. See e.g., Philip Morris USA, Inc. v. Cuculino, 165 So. 3d 36, 38 (Fla. 3d DCA 2015).

10

But while we conclude that these arguments were improper, we also conclude that the trial court properly denied Defendants' motion for mistrial and motion for new trial.

We address Comments Number One and Three together, as neither were properly preserved at trial. As to Comment Number One, Defendants are urging, as a basis for reversal, a different objection than the one they raised at trial. As previously explained, Defendants contend in this appeal that the argument was a Golden Rule violation; however, the objection actually interposed at trial was "Objection, there's no evidence of this." This objection failed to place the trial court on notice of the error that Defendants now assert in this appeal. See Bertolotti v. Dugger, 514 So. 2d 1095, 1096 (Fla. 1987) (holding that "to preserve an issue for appellate review, the specific legal argument or ground upon which it is based must be presented to the trial court"); Connolly v. State, 172 So. 3d 893, 902 (Fla. 3d DCA 2015). By failing to properly preserve this objection, Defendants waived the issue for appeal, absent a showing of fundamental error. See McDonald v. State, 743 So. 2d 501 (Fla. 1999). In like fashion, Defendants' failure to make any contemporaneous objection to Comment Number Three also waived this claim for appellate review absent a showing of fundamental error.

As to these unpreserved comments, we conclude that the trial court did not abuse its discretion in denying the motion for new trial. Upon this record, we

determine that these comments did not rise to the level of fundamental error, Brooks v. State, 762 So. 2d 879, 898-99 (Fla. 2000), and that the trial court could reasonably conclude "that the improper closing argument . . . was not harmful, incurable, or of a character to so damage the fairness of the trial that the public's interest in our system of justice requires a new trial." Murphy v. Int'l Robotic Sys., Inc., 766 So. 2d 1010, 1032 (Fla. 2000).

Comment Number Two was properly preserved by an objection. The trial court correctly *sustained* that objection but no curative instruction was requested or given and a motion for mistrial was thereafter denied. We review the trial court's denial of a motion for mistrial and motion for new trial for an abuse of discretion. Cuculino, 165 So. 3d at 39. "If the issue of an opponent's improper argument has been properly preserved by objection and motion for mistrial, the trial court should grant a new trial if the argument was 'so highly prejudicial and inflammatory that it denied the opposing party its right to a fair trial.'" Id. (quoting Engle v. Liggett Grp., Inc., 945 So. 2d 1246, 1271 (Fla. 2006)). We find no abuse of discretion in the trial court's denial of the motion for mistrial and subsequent denial of the motion for new trial, and conclude that the argument was not so highly prejudicial as to deny Defendants a fair trial.

Finally, considering the cumulative effect of both the preserved and unpreserved errors in closing argument, we find no abuse of discretion in its denial

12

of Defendants' motion for new trial, as the improper arguments did not deprive Defendants of a fair trial. See Brooks, 762 So. 2d at 899 (the standard applicable to consideration of the cumulative effect of both the objected-to and unobjected-to closing argument is whether the appellant was denied a fair trial).

### 3. The Verdict

### a. Compensatory Damages Award

Defendants argue that the $10 million compensatory damage award is excessive and that the trial court erred in denying Defendants' motion for remittitur.[4] We apply an abuse of discretion standard in reviewing a trial judge's denial of a motion for remittitur of a compensatory damages award. Glabman v. De La Cruz, 954 So. 2d 60 (Fla. 3d DCA 2007). Because damages are inherently difficult to measure, such a decision is generally one to be made by the jury, not by an appellate court. R.J. Reynolds Tobacco Co. v. Townsend, 90 So. 3d 307, 311 (Fla. 1st DCA 2012). Further, "the law has long given considerable deference to the trial court's decision [on a motion for remittitur] because of the unique vantage point which the trial court has to personally observe the witnesses and jury and to assess the credibility and manifest weight of the evidence–as opposed to the appellate court which has only a cold record to review." Rety v. Green, 546 So. 2d

---

[4] Defendants further argue that if the remitted amount is more than $1 million, Defendants reserve their right to reject the remittitur in favor of a new trial on compensatory damages as well as punitive damages.

410, 418 (Fla. 3d DCA 1989). <u>See also</u> <u>Lorillard Tobacco Co. v. Alexander</u>, 123

So. 3d 67 (Fla. 3d DCA 2013). This longstanding principle of deference to the

trial court's review of a jury's damages award is reinforced by section 768.74,

Florida Statutes (2016) entitled "Remittitur and additur," which provides:

> 1) In any action to which this part applies wherein the trier of fact determines that liability exists on the part of the defendant and a verdict is rendered which awards money damages to the plaintiff, <u>it shall be the responsibility of the court, upon proper motion, to review the amount of such award to determine if such amount is excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact.</u>
>
> (2) If the court finds that the amount awarded is excessive or inadequate, it shall order a remittitur or additur, as the case may be.
>
> (3) It is the intention of the Legislature that awards of damages be subject to close scrutiny by the courts and that all such awards be adequate and not excessive.
>
> (4) If the party adversely affected by such remittitur or additur does not agree, the court shall order a new trial in the cause on the issue of damages only.
>
> (5) In determining whether an award is excessive or inadequate in light of the facts and circumstances presented to the trier of fact and in determining the amount, if any, that such award exceeds a reasonable range of damages or is inadequate, the court shall consider the following criteria:
>
> (a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;
> (b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;

14

(c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;

(d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and

(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.

(6) It is the intent of the Legislature to vest the trial courts of this state with the discretionary authority to review the amounts of damages awarded by a trier of fact in light of a standard of excessiveness or inadequacy. The Legislature recognizes that the reasonable actions of a jury are a fundamental precept of American jurisprudence and that such actions should be disturbed or modified with caution and discretion. However, it is further recognized that a review by the courts in accordance with the standards set forth in this section provides an additional element of soundness and logic to our judicial system and is in the best interests of the citizens of this state.

(Emphasis added).

An award of damages may not be declared excessive merely because it is above the amount which the trial court itself may believe the jury should have awarded. Lassitter v. Int'l Union of Operating Eng'rs, 349 So. 2d 622, 627 (Fla. 1976); Townsend, 90 So. 3d at 311. In assessing whether the award is excessive, the "trial court does not sit as a seventh juror. Neither does the reviewing court reserve the prerogative to overturn a damages verdict with which it merely disagrees." R.J. Reynolds Tobacco Co. v. Webb, 93 So. 3d 331, 336 (Fla. 1st DCA 2012) (quoting Dyes v. Spick, 606 So. 2d 700, 702 (Fla. 1st DCA 1992)). "The verdict should be disturbed only when 'it is so inordinately large as obviously

15

to exceed the maximum limit of a reasonable range within which the jury may properly operate.'" Townsend, 90 So. 3d at 311 (quoting Bould v. Touchette, 349 So. 2d 1181, 1184 (Fla. 1977)).

Upon our consideration of the record in this case as well as other compensatory damages awards in similar Engle-progeny cases, and giving proper deference to the jury's award and the trial court's subsequent review of that award, we cannot conclude that the trial court abused its discretion in denying Defendants' motion for remittitur, as we cannot say that the damages award "obviously exceeds the 'reasonable range within which the jury may properly operate.'" Townsend, 90 So. 3d at 311-12 (quoting Bould, 349 So. 2d at 1185) (affirming trial court's denial of motion for remittitur of $10.8 million compensatory damages award in Engle-progeny case). See also Alexander, 123 So. 3d at 79 (affirming trial court's order remitting compensatory damages award from $20 million to $10 million, and holding it was appropriate to defer to "[t]he trial court, [which] is in the best position to determine whether the compensatory damage award is excessive").

**b. Reduction of Compensatory Damages Based Upon Comparative Fault**

Defendants next contend that they are entitled to a reduction in compensatory damages based on the jury's finding of comparative fault. Conceding that, in a negligence action, such a reduction would be appropriate,

16

Plaintiff counters that no reduction of the award is warranted in the instant case because, at its core, the case is founded upon an intentional tort. For this proposition, Plaintiff relies upon section 768.81, Florida Statutes (2016), entitled "Comparative fault." That statute provides in pertinent part:

> **(1) Definitions.**-- As used in this section, the term :
>
> . . .
>
> (c) "Negligence action" means, without limitation, a civil action for damages based upon a theory of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories. The substance of an action, not conclusory terms used by a party, determines whether an action is a negligence action.

Subsection (2) further provides:

> **(2) Effect of contributory fault.**-- In a negligence action, contributory fault chargeable to the claimant diminishes proportionately the amount awarded as economic and noneconomic damages for an injury attributable to the claimant's contributory fault, but does not bar recovery.

Subsection (4) provides:

> **(4) Applicability.**-- This section does not apply to any action brought by any person to recover actual economic damages resulting from pollution, <u>to any action based upon an intentional tort</u>, or to any cause of action as to which application of the doctrine of joint and several liability is specifically provided by chapter 403, chapter 498, chapter 517, chapter 542, or chapter 895.
>
> (Emphasis added.)

In <u>R.J. Reynolds Tobacco Co. v. Sury</u>, 118 So. 3d 849 (Fla. 1st DCA 2013), the trial court denied the defendant's motion to reduce the plaintiff's compensatory damages award by the smoker's comparative fault based on its conclusion that the "core" of the plaintiff's suit was founded upon an intentional tort. <u>Id.</u> at 852. The First District found no abuse of discretion in the trial court's determination that although the plaintiff pleaded negligence and strict liability, the additional allegations of the intentional torts and the proof of affirmative, calculated misrepresentations in the tobacco companies' advertising and other publications supported its conclusion that at its core, the action involved an intentional tort. <u>Id.</u>

In <u>R.J. Reynolds Tobacco Co. v. Schoeff</u>, 178 So. 3d 487 (Fla. 4th DCA 2015), the trial court determined that, at its core, plaintiff's suit was a product liability suit based on conduct grounded in negligence, and therefore reduced the compensatory damages award based on the plaintiff's comparative fault. The Fourth District, applying a de novo standard of review, affirmed the trial court's determination. <u>Id.</u> at 496.

Upon our de novo review,[5] we hold that, in the instant case, the trial court properly denied Defendants' request because at its core this was an "action based

---

[5] We note that the First District in <u>Sury</u> applied an abuse of discretion standard to a review of this determination, while the Fourth District in <u>Schoeff</u> applied a de novo standard. The Florida Supreme Court granted review of <u>Schoeff</u> based upon express and direct conflict with <u>Sury</u>. <u>Schoeff v. R.J. Reynolds Tobacco Co.</u>, SC15-2233 (oral argument held March 8, 2017). We agree with the Fourth District in this regard, and apply a de novo standard to review of the trial court's

18

upon an intentional tort." § 768.81(4). See also Merrill Crossings Assocs. v. McDonald, 705 So. 2d 560, 563 (Fla. 1997) (acknowledging that "[t]he words chosen 'based upon an intentional tort,' imply to us the necessity to inquire whether the entire action against or involving multiple parties is founded or constructed on an intentional tort. In other words, the issue is whether an action comprehending one or more negligent torts actually has at its core an intentional tort by someone"). Therefore, the trial court did not err in denying Defendants' motion to reduce the compensatory damages award by the percentage of comparative fault assigned by the jury to Patricia.

We find that the other arguments advanced by Defendants are without merit and affirm on those points without further discussion.[6]

Affirmed.

---

determination. In doing so, we acknowledge conflict with the standard of review applied by the First District in Sury.

[6] We note that, among these issues, Defendants have asserted that Plaintiff's use of and reliance upon the Engle findings violates due process, and that Defendants were entitled to a credit against the punitive damages judgment, based on the Guaranteed Sum Stipulation arising out of the original Engle litigation.

19