# Third District Court of Appeal

## State of Florida

Opinion filed April 24, 2019.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D17-474
Lower Tribunal No. 11-186

————————————

**CEC Entertainment, Inc., etc.,**
Appellant,

vs.

**Aurora Zaldivar,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jerald Bagley, Judge.

Vernis & Bowling of Miami, P.A., Eric J. Knuth and Christopher C. Horne, for appellant.

Lopez & Best and Virginia M. Best and Johanna M. Menendez, for appellee.

Before EMAS, C.J., and SALTER[1] and FERNANDEZ, JJ.

FERNANDEZ, J.

————————————

[1] Did not participate in oral argument.

CEC Entertainment, Inc., d/b/a Chuck E. Cheese's, Inc., appeals the trial court's order granting Aurora Zaldivar's motion for new trial. Following a review of the record, we reverse the order and remand to the trial court to reinstate the jury verdict.

This case involves the alleged injury of Zaldivar and her minor child at a Chuck E. Cheese's located in Kendall, Florida. Zaldivar filed a complaint on behalf of her son, Christopher Castellanos, a minor, and herself against CEC. Zaldivar alleged that she and Castellanos were injured at CEC's restaurant when a freestanding, unsecured booth, tipped over backward while they were attempting to exit the booth where they had been sitting. Zaldivar alleged that the injuries suffered by her and Castellanos were the result of CEC's negligence. CEC answered that the booth tipped over as a result of the minor son pushing back on the booth, lifting it off the floor.

On September 6, 2016, Zaldivar filed a motion in limine seeking to preclude evidence or mention of her employment as the legal secretary of her attorney, Gabriel Sanchez, and the Sanchez Law Group, who is representing her in this case. CEC responded that Zaldivar failed to demonstrate that the evidence was not admissible under section 90.103, Florida Statutes (2016), and asserted that the evidence was relevant in assessing Zaldivar's credibility, given that she was working for Sanchez and had been a legal assistant for a personal injury firm for

nearly a decade. On September 22, 2016, the trial court granted, in part, and denied, in part, Zaldivar's motion in limine stating:

> Granted, that the Defendant shall make no mention, suggestion or assertion of any collusion or fraud, between Plaintiff and her attorneys, Gabriel M. Sanchez and The Sanchez Law Group. Denied in part. Defendant can mention where she works and how long she worked for counsel for the Plaintiff. Defendant is limited to only that.

On October 17, 2016, the jury trial concluded. On the question of whether CEC's negligence was a legal cause of Zaldivar and her son's injuries, the jury rendered a verdict of no cause of action and found in favor of CEC. Zaldivar filed a motion for a new trial alleging: 1) the trial court erred in allowing testimony regarding Zaldivar's place of employment and that her employer represented her in the claim; 2) the trial court erred by allowing evidence of no other previous incidents at Chuck E. Cheese with respect to a booth tipping over; 3) CEC attacked Zaldivar and Zaldivar's attorney in its closing argument, alleging that Zaldivar participated in fraud and collusion evidenced by her employment with the firm; and 4) Zaldivar's son should not have been on the verdict form as a Fabre[2] defendant, as there was no evidence to support an argument that Zaldivar was comparatively negligent. The only allegation relevant to this appeal concerns the statements made by CEC's attorney during closing arguments, where the attorney called Zaldivar a "magician" and a "manipulator," and violated the Golden Rule by

_____

[2] Fabre v. Marin, 623 So. 2d 1182 (Fla. 1993).

3

placing the jury in the defendant's position. However, Zaldivar failed to voice a contemporaneous objection at trial.

Zaldivar's motion for new trial was heard on January 4, 2016. The hearing focused on the comments CEC's attorney made during closing. In its defense, CEC relied on the Florida Supreme Court's four-part test in Murphy v. International Robotic Systems, 766 So. 2d 1010 (Fla. 2000), to determine fundamental error, stating:

> [T]urning back to Murphy and the arguments that were raised on the issue of fundamental error. It sets forth the four part tests. I want to bring up this language because it's very important. Harmfulness in this context carries a requirement that the comments be so highly prejudicial as to gravely impair a fair consideration and determination of the case by the jury. Passing remarks of little consequence in the scope of a lengthy trial should find no sympathy -- or find little sympathy if no contemporaneous objection is voiced.

At the conclusion of the hearing, the trial court found that it had properly allowed evidence regarding Zaldivar's employment but granted a new trial based on the comments CEC's attorney made at closing:

> I am finding that you committed error by personally attacking this plaintiff by calling her a magician, a manipulator, as well as the opinion you elicited or presented that is not supported by the evidence. And for that reason I grant a new trial. That's my ruling. . . . Submit an order, please, that just indicates the motion is granted. You've got a transcript. And if it goes up to the Third, the Third will review the transcript of this hearing as well as the closing argument.

The trial judge did not address the Murphy test nor Zaldivar's failure to voice a contemporaneous objection. No findings were made as to the issues of comparative

4

negligence, <u>Fabre</u> defendants, or fraud and collusion. The trial court entered an order simply granting the motion for new trial. This appeal followed.

The standard of review of an order granting a new trial is abuse of discretion. <u>Brown v. Estate of Stuckey</u>, 749 So. 2d 490, 497-98 (Fla. 1999). We agree with CEC that the trial court erred in ordering a new trial without considering the full four-part test set forth in <u>Murphy</u>. Yet, even if the trial court properly applied <u>Murphy</u>, the record reflects that the comments made during closing did not rise to the level of fundamental error that would require a new trial. Had Zaldivar voiced a timely objection during CEC's closing argument, the errors could have been cured.

In <u>Murphy</u>, the Florida Supreme Court implemented the four-part test in order to curtail the number of new trials based on "unobjected-to closing arguments." The Supreme Court emphasized this point and summarized the test as follows:

> [B]efore a complaining party may receive a new trial based on unobjected-to closing argument, the party must establish that the argument being challenged was improper, harmful, incurable, and so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial. . . . *Although we have not absolutely "closed the door" on appellate review of unpreserved challenges to closing argument, we have come as close to doing so* as we believe consistent with notions of due process which deserve public trust in the judicial system.

<u>Murphy</u>, 766 So. 2d at 1031 (emphasis added).

The first step, of the four-part analysis, is to determine if the argument is improper. To aid the trial courts in this determination, the Supreme Court provided a number of principles for the courts to consider. One such principle, taken from Bertolotti v. State, 476 So. 2d 130, 134 (Fla. 1985), provides, "[C]losing argument must not be used to 'inflame the minds and passions of the jurors so that their verdict reflects an emotional response ... rather than the logical analysis of the evidence in light of the applicable law.'" Murphy, 766 So. 2d at 1028. In Murphy, during closing argument, defense counsel accused plaintiff of using the lawsuit to cash in on a "lottery ticket" and also repeatedly used the term "B.S. detector." The plaintiff failed to object and later moved for a new trial based on these comments. The Supreme Court held that counsel's comments were improper but did not rise to the level of fundamental error based on the full Murphy analysis. Id. at 1032. In like manner, we find that the trial court correctly determined that CEC's counsel's use of the terms "magician" and "manipulator" to describe Zaldivar, along with the Golden Rule violation, constituted improper argument. However, the trial court failed to apply the remaining three parts of the Murphy test, that being, whether the argument was also harmful, incurable, *and* of a nature that the public's interest in justice requires a new trial. The Supreme Court cautioned the courts that granting a new trial was not to be used as a vehicle to punish or regulate the misconduct of attorneys. Id. at 1029.

After determining that the argument is improper, the next step is to consider whether the argument is harmful. Id. The Supreme Court defined "harmfulness" as comments that are "so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury." Id. And, "[p]assing remarks of little consequence in the scope of a lengthy trial should find *little sympathy if no contemporaneous objection is voiced*." Id. at 1029-1030 (emphasis added). Courts are to consider if the verdict could not have been reached but for such comments. Id. at 1030.

Yet, even if an argument is found to be both improper and harmful, the complaining party must also prove that it was incurable. "[A] timely objection to improper closing argument is required before a new trial may be granted based on such argument unless 'the improper remarks are of such character that neither rebuke nor retraction may entirely destroy their sinister influence.'" Id. (citing to Baggett v. Davis, 169 So. 372, 379 (Fla. 1936)). The Supreme Court stated that "it will be extremely difficult for a complaining party to establish that the unobjected-to argument is incurable." Id. at 1030.

Lastly, "the party finally must also establish that the argument so damaged the fairness of the trial that the public's interest in our system of justice requires a new trial." Id. (citing Hagan v. Sun Bank of Mid-Florida, N.A., 666 So. 2d 580, 585 (Fla. 2d DCA 1996)). The extremely limited types of arguments that would

fall under this description would be a closing argument that would appeal to "racial, ethnic, or religious prejudices." Id. at 1030.

In light of our review of the four-part test in Murphy, we cannot find that CEC's comments, though improper, rise to the level of fundamental error requiring a new trial in this case. As defined in Murphy, the level of harmfulness required is not present in this case, and the alleged errors could have been cured had a proper objection been voiced. See also Philip Morris USA, Inc. v. Ledoux, 230 So. 3d 530, 537 (Fla. 3d DCA 2017) (finding that though plaintiff's argument at closing violated the Golden Rule, defendants failure to make a contemporaneous objection waived the claim from appellant review without a showing of fundamental error); City of Miami v. Kinser, 187 So. 3d 921, 925 (Fla. 3d DCA 2016) ("While it is clearly improper for an attorney to bolster the credibility of a witness, attack a party for putting on a valid defense, or appeal to the conscience of the community, most of the improper arguments were timely objected to; curative instructions were given by the trial court; and the prejudice to the City caused by these improper arguments was mitigated by the curative instructions."). As to the public interest portion of the analysis, CEC's comments plainly do not fall within the traditional categories of prejudice.

Upon review of the record, we find that the trial court erred in ordering a new trial without considering the full four-part test set forth in Murphy. Yet, even

8

if the trial court properly applied the <u>Murphy</u> analysis, the record reflects that the comments made during closing did not rise to the level of fundamental error that would require a new trial. Therefore, the trial court's order granting a new trial is reversed and remanded with instructions to reinstate the jury verdict.

Reversed and remanded.